J. A. Heydrick *v.* E. J. Hutchinson et al., Appellants.

*Charge of Court—Tone of Charge—Judge's comments upon testimony.*

While a judge may express to a jury his opinion of the weight of the testimony and its bearing and effect; and, if in his opinion the evidence is not sufficient to sustain a verdict, may give a peremptory instruction, yet whatever he does should be done directly, so that his acts may be fairly brought up for review by the party aggrieved.

When the effect of an instruction is to take from the jury all testimony except that of a particular witness, and to leave to the jury the construction of a paper, properly for the Court, such error is not cured by telling the jury that the whole testimony is for it to pass upon.

A charge whose tendency as a whole is to belittle and prejudice one side, and which is not in expression and tone a judicial presentation of the case, is error.

Argued Oct. 5, 1894. Appeal, No. 245, Oct. T., 1894, by defendants from judgment of C. P. Venango Co., Jan. T., 1893, No. 10, on a verdict for the plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, MCCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Ejectment. Before TAYLOR, P. J.

At the trial it appeared that defendants claimed title under a deed made to them by the county commissioners of Venango county, who in turn purchased at a treasurer's sale of the same, made July 11, 1890, for arrears of taxes of 1889. It was conceded that plaintiff had title to the land in question prior to the sale by the treasurer, and that defendants' title depended upon the validity of the treasurer's sale. It was also conceded that the sale by the treasurer, and the subsequent sale by the county commissioners, were regularly made, and that the only point at issue was whether the return of the collector of taxes for the year of 1889 with respect to the land in question was a correct return. Bearing on this point there were two questions of fact for the jury : (1) Was there personal property on the land liable to seizure for the taxes of the year 1889? (2) Did the tax collector use reasonable diligence in ascertaining whether there was such property thereon.

The following paper, signed by J. A. Heydrick, was offered in evidence by defendants. " Received of J. A. Heydrick an understanding that you release me of the tax for 1889, and also that I, J. A. Patterson, done my duty by returning it."

The court charged as follows :

" This is an ejectment to recover the possession of about 100 acres in Frenchcreek township, the actual possession of which is claimed to be in the defendants here. The plaintiff says he has the right of possession to it. The return of the sheriff to the writ, as given in evidence, is prima facie evidence that the defendants are in possession of the land. [From the testimony you could hardly think anybody could be in possession of that land. From some of the testimony you might conclude that a man could not be in possession, and could not have property upon the land. It is a most singular thing to me.] [1] [There is no question here that Mr. Heydrick is the owner of that land, unless it is raised by the paper offered in .evidence by the defendant.] [2] [There might be some question whether a man signing a paper like that would know whether he owned land or anything else. There is only one excuse, and that would be that they were both so drunk they didn't know what they were doing, or perhaps, as Mr. Heydrick says, he was very much bothered and didn't know what was in it. Men ordinarily in their sound minds don't make a paper that would wipe out their title to a hundred acres of land unless there is some reason, and so far as that is concerned, in my opinion, of course it is for you, but, in my opinion, judging from the paper itself, it would look as if Patterson, the collector, had got into a scrape and he came to Mr. Heydrick to get out of it, and, as he says, without knowing what was in it, he signed it. It will be pretty hard for you to find out what it means when you look at it. There are all kinds of expressions used, but it looks to me as though it was drawn to protect the tax collector after he presumed he would get into trouble, and that paper was procured to relieve him from that difficulty. It is the only way I can put a construction upon that paper and the conduct of the parties if they were sane, but it is for you.] [3] The land belonged to Mr. Heydrick. It was regularly assessed and sold for the taxes of 1889. There were 100 acres, and the defendants here obtained what title there was derived under that sale. [The whole taxes,

road; poor, school and county amounted to $6.16, and that is the amount this land was sold for. When land is of so little value that the whole amount of taxes assessed upon 100 acres amounted to $6.16 men are not looking so carefully after it as where property is of more value.] [4]

" [The plaintiff says that during these years he was living part of the time in the village of Utica, two or three miles from the land, and part of the time upon a farm he had, and he went once in a while down there, but didn't know whether there was any property upon the land at all, that he had rented this land to Mr. Vincent who was to pay the road and school taxes for the use of the land as long as he remained there.] [5] If that is so that created a tenancy. If there was a bargain between Mr. Heydrick and Mr. Vincent, a contract by the terms of which Vincent agreed to take this property and look after it and to pay the road and school taxes, that created a tenancy between Vincent and the plaintiff. If that was so Heydrick had the right to rely upon that tenancy, looking to that first, for the taxes. Whether Vincent ever paid a dollar or not, it only has a bearing on the question as to whether there was an actual tenancy there. [Heydrick and Vincent both tell you that was so; that he made a bargain and rented this land from 1886 until 1893 ; pastured from eight to twelve head of cattle on it from April till the last of October or November each year. It turned out in the end perhaps that the cattle belonged to his son.] [6]   [In July there was a stack of hay placed there and it remained there till the next year. The other stack was removed during the winter. The cattle were worth $40 and the hay was worth $75. There is no controversy as to the value of that hay. Mr. Vincent and Mr. Heydrick both tell you that was the agreement between them and there is not a shadow of evidence to the contrary. Yarnell says he helped stack the hay. Mr. Adams says one stack remained there till the last part of February and he says this man Vincent pastured some cattle for him on this land. ' I put a fence there and pastured the cattle there. I pastured them there in 1887, 1888 and 1889, that's under an agreement with Vincent allowing me to pasture the cattle there.' Under this arrangement he was to fence them from the island.] [7]

" [Upon the part of the defendant a man Bunnel is called.

Before he got through and left the stand you were pretty well satisfied that he didn't know what he was talking about or he was swearing very recklessly. If I remember right he swore everybody's cattle run in there, it was general pasture ground for everybody. That was bearing upon the question as to whether the collector was using due diligence. Before he got through, on cross-examination, he admitted that during the year 1889 he could not state of a single beast he had seen upon this land; although he had made this assertion, except two of his own cows that had been trespassing there, and Mr. Vincent's. They were the only cattle he could tell you of. Another thing, gentlemen, if he was living within sixty rods of that place, and if he could tell within a rod where the line of that farm was, in my opinion, it was not hard for the tax collector to find out whether the property, the cattle and hay, were on the farm or not. The hay was about the middle of this piece of land. There were two stacks there, in plain sight of the road, where a man couldn't avoid seeing them if he was going along the main traveled road.] [8]

" [The collector of taxes is bound to use reasonable diligence in looking for property upon land by a sale of which the taxes could be paid. If he uses reasonable diligence and cannot find any personal property upon the land, he may then return it, and a sale of the land under these circumstances, other requirements being complied with, would vest a good title in the purchaser. On the contrary if there was within plain sight of a public road two stacks of hay, and one of them remained till the next spring, if a tax collector was blind, a jury would be warranted in finding that he didn't use reasonable diligence in finding that property.] [9]   [It looks to me as though some one was trying to get title to a hundred acres of land without paying more than a nominal sum of money.] " [10]

Verdict and judgment for plaintiff. Defendants appealed.

*Errors assigned* were (1–10) instructions, quoting them.

*Robert F. Glenn,* for appellants, cited : Madara v. Ebersole, 62 Pa. 160 ; Bergner v. Thompson, 74 Pa. 168 ; McClurkan v. Byers, 74 Pa. 405.

*C. I. Heydrick*, *C. Heydrick* with him, for appellee, cited: Bank. v. Tinker, 158 Pa. 17 ; Mead v. Conroe, 113 Pa. 220.

OPINION BY MR. JUSTICE FELL, Jan. 7, 1895 :

The specific exceptions to the charge include in the aggregate nearly all that was said in submitting the cause to the jury, and while many of them are not well founded, the charge as a whole is fairly open to the objection that its tendency was to belittle and prejudice the defence and that in expression and tone it was not a judicial presentation of the case. A judge may express to the jury his opinion of the weight of the testimony and of its bearing and effect, and there are cases in which he should do so. If in his judgment the testimony is not sufficient to sustain a verdict it is his right, and it may be his duty, to end the trial by a peremptory instruction. But whatever he does in the course of a trial should be done directly, that his acts may be brought fairly for review by the party aggrieved.

The plaintiff in this case brought ejectment to recover land sold for taxes. The controversy related to the validity of the sale, and that depended upon whether there had been personal property on the land liable to seizure, and whether the collector had made reasonably diligent effort to ascertain this before returning the property for sale. A writing, inartificially drawn, but apparently intended as an exoneration of the tax collector for having made the return, was put in evidence by the defendants to show an admission by the plaintiff which went to establish the regularity of the sale. Referring to this the learned judge said : " There is no question here that Mr. Heydrick is the owner of that land, unless it is raised by the paper offered in evidence by the defendant." This was not a conveyance of title ; it had been given to another party after title had vested in the defendants. It had no bearing whatever upon the case except for the purpose for which it was offered. The effect of this instruction was to take from the jury all other testimony produced by the defendants and to direct their attention exclusively to a matter which at most only qualified what the plaintiff had testified to, and to leave to them the construction of a writing which was clearly for the court. Yet the whole testimony was subsequently submitted to them to pass upon.

This course, with the comments made upon the witnesses in the charge, was prejudicial to the defendants without giving them, the advantage of a distinct ruling.   It is conceded that it can be sustained only upon the ground that the court would have been justified in directing a verdict for the plaintiff.   If that had been done the question of the sufficiency of the evidence for the defendants could have been raised for argument and decision.   The question is not properly raised here and cannot be considered.   There may have been very little merit in the defence, but it was presented in a regular and orderly manner.   If it was insufficient to sustain a verdict the case might have been properly withdrawn, but if there was an issue of fact for the jury to pass upon it should have been submitted to them judicially.

The second and third assignments of error are sustained. It is unnecessary to notice the other assignments except to say that they do not seem to be well founded.   The judgment is reversed and a venire de novo awarded.