## Commonwealth *v.* Meads, Appellant.

*Trade-marks—Constitutional law—Acts of May* 21, 1895, *P. L.* 95, *May* 2, 1901, *P. L.* 114, *and April* 3, 1903, *P. L.* 134.    *Union labels.*

The Act of May 21, 1895, P. L. 95, as amended by the Acts of May 2, 1901, P. L. 114, and April 3, 1903, P. L. 134, and entitled "An Act to provide for the adoption of trade-marks, labels, symbols, or private stamps by an incorporated or unincorporated association or union of workingmen, and to regulate the same," and providing that a violation of the act shall be a misdemeanor, is not defective in title and unconstitutional.

*Criminal law—Jurisdiction—Locus in quo—Trade-marks—Cigar labels.*

Where a person places counterfeit cigar labels on cigars, and ships them to a purchaser in another county under an arrangement by which the title to the cigars was not to pass until they reached the place of consignment, the seller of the cigars may be convicted, in the county where the purchaser resides, of violating the Act of May 21, 1895, P. L. 95.

*Practice, Q. S.—Trial—Charge—Unfair charge.*

It is not error for a judge in his charge to a jury to express his opinion upon the facts, if done fairly, provided he does not give a binding direction, or interfere with the province of the jury; but in every case which justifies a judge in expressing an opinion the jury should be directly informed that it is his opinion, and that they are not to be bound by it; and the expression of opinion should always be made with the utmost fairness and absence of partisanship.

If the charge gives undue prominence to the testimony of a witness for one of the parties and impeaches the testimony of two witnesses for the other party, the judgment will be reversed.

Argued Oct. 24, 1904.    Appeal, No. 18, March T., 1905, by defendant, from judgment of Q. S. Adams Co., April T., 1904, No. 6, on verdict of guilty in case of Commonwealth v. N. G. Meads.   Before RICE, P. J., BEAVER, ORLADY, SMITH, POR-TER, MORRISON and HENDERSON, JJ.   Reversed.

Indictment for counterfeiting union cigar labels.   Before SWOPE, P. J.

The court charged in part as follows:

[Now gentlemen, we have been lately hearing a great deal about labor unions, about strikes and the difficulty and agitation between labor and capital in different sections of the country.

Let me say to you, gentlemen, that in the stirring times in which we are now living, with so much combination of efforts and organization of power, and with so much accomplished by combination and unity of action for the furtherance of ends, that it is not only the privilege, legal right, but in our opinion, bounden duty of labor to organize for its protection, and that if they fail to do so that their truest interest might soon be crushed under the pitiless juggernaut of conscienceless capital. It is entirely proper, legal and right for capital to combine and to organize for the proper ends, and it is equally right, legal and proper for labor to do the same thing.   The labor of this country, as of all others, constitutes the great mass of our humanity.  " The laborer is worthy of his hire."   That has been a blessed injunction that has been given to us from the dawn of the new dispensation.   For the cigar makers of this nation to form themselves into a union for the purpose, al-

leged by the formation of this union, to benefit their condition socially, financially, morally and intellectually is certainly a most commendable effort, and ought to result for all in great and general benefit and blessing.   Labor, combined and acting in union, can protect her interests, but without combination, and union of efforts they will be helpless to do so.   They would be like a great army unable to accomplish what it ought to accomplish, if it is without organization, discipline and leadership.   The Cigar Makers' International Union of America, after the passage of this act of assembly in 1895, originally adopted a trade-mark to identify their goods and fully comply with the law in all its provisions with reference to it.   That was an honorable thing to do, gentlemen; that was the proper thing to do, guarding the manufacture of their products in the interests of hygiene by seeing that workmen were provided with proper places in which to work; seeking to control, in a measure, the price of labeling, as they claim, no doubt, the best skilled workmen, cigar makers, and they stamp their products with the union label, not enforcing any one to buy, not trying to compel them to buy, but a mere putting on of their union stamps inviting every one to buy because it has the union label.] [7]

[Now gentlemen, this is a case, as I said to you in the beginning, that may well command your careful attention.   If you believe the testimony of Mr. Meads; he admits these cigars were packed by his packers; he admits that he went to the express office and addressed them to Mr. Hershey at Gardner's station in this county; that when they were packed they had not this counterfeit union label on; that he did not put it on; that he ordered no one else to put it on.   If you believe the testimony of Jackson and Stine in corroboration of that fact, then he is not guilty.   If under testimony the commonwealth fail to prove that he had this knowledge beyond a reasonable doubt, you would not be justified in finding him guilty, but, gentlemen, search for and find the real facts in this case; that is the bounden duty resting upon you.   If these men are telling the truth, he is not guilty, but can you believe them; as reasonable men do you believe them?   You are not, it is true, to find out who put these stamps on, if you find the defendant did not. What are you to believe as reasonable men, beyond a reasonable

doubt? How did these admittedly counterfeit union labels get upon those boxes, received, if you believe they were so received, with them on at Gardner's station in December and November, 1903? If you believe they were on, who put them on? Has the commonwealth, from all the testimony, established beyond a reasonable doubt that Meads did, or had it done? If so he is guilty of their being there; if they have not he is not guilty.

Do not be taken away because three men swear a certain thing. You are not to measure the testimony by the weight of numbers. If, from all the testimony, you believe the three men are falsifying, and simple circumstances only stand against it, and you must find in favor of what you believe to be, beyond a reasonable doubt, the truth. You are not mere measurers, measuring numbers.] [8]

[The testimony on the part of the commonwealth—we will simply mention the names of the witnesses—was begun by calling H. H. Hershey. Mr. Hershey is one of the most reputable citizens, as you all know, a man who has been in business for some time in the borough of York Springs.

Mr. Hershey admits that he aided these representatives of the cigarmakers' union to discover what they claimed was a violation of the law, the protection of which was dear to them. There has been much said about Mr. Hershey's connection with this. He admits, by reason of writing the letters, going to the station and bringing the goods from the station, he was paid about $20.00. Mr. Hershey, gentlemen, says he was not trying to have them commit a crime, but he was aiding these men to discover them in the commission of a crime, if they were committing a crime, and are you justified in saying improperly to discover a crime that was alleged to have been committed and that was done in covert? We submit not.

Mr. Miller stands in the same relation as Mr. Hershey; he is a citizen of this county and constable for that district.

I. B. Kuhn is called as witness on the part of the commonwealth. He is a representative and an employee of this cigarmakers' union. Geo. P. Allen is also in the same way.

Mr. Kuhn and Mr. Allen are not to be disbelieved simply because they have been acting in the capacity of detective work for this union. They are not to be discredited because

the union, in the interests of labor, pays them a reasonable, or what you may think a very liberal, salary, for they would, in the choice of men for this work choose men of such character.

They are not to have the odium of untruthfulness cast upon them unless the circumstances of this case justify you in believing them to be; they are to be believed although they are agents of this company and have been appointed to look up infractions of the law, unless under the circumstances surrounding their testimony here you have reasonable cause to disbelieve them.

Geo. P. Allen was called, who testified—he was one of the agents of this union, and for that reason he was not to be disbelieved unless you find from his manner and environment, you are not entitled to give him credence.] [9]

[If you find from the testimony in this case that Mr. Meads aided and abetted in the shipment of these cigars which contained counterfeit labels; aided and assisted in putting them into the hands of the innocent agent of the Adams Express Company, consigned them to Mr. Hershey at Gardner's station, subject to examination, we instruct you, as a matter of law, that there would be such using and such displaying of counterfeit label as would come within the prohibition of this act and within the jurisdiction of this court.

If you determine that this label upon these cigars was a counterfeit union label, then you will determine whether Meads aided and assisted in sending them with these counterfeit union labels on, from Red Lion to Gardner's station in Adams county.

I do not propose to refer to any more testimony. We intend to leave it to you and your recollection of it and to your determination as to what the true facts in this case are. Was this a counterfeit? Were the goods shipped through the Adams Express Company with this counterfeit label on to Mr. Hershey at Gardner's station, November 14 and December 14, with the direction or procurement of Mr. Meads? If you believe that to be established beyond a reasonable doubt, you should find the defendant guilty in manner and form as he stands indicted.] [10]

[Haines testifies that these letters, all of which you will read and remember, were written by him and they were writ-

ten at the dictation and with the knowledge of Meads, not that Meads formulated their wording and dictated to him as he wrote it down on the typewriter, but that he acquainted him with all Mr. Hershey's letters and he answered them as advised to do by Meads.

Moses Stine and Wm. Henry Jackson were called as witnesses. Both have been working, one for three years and one possibly longer than that, and you may find they are both now in the employ of Meads; at least one of them is.] [11]

[Now, gentlemen, in every criminal case the jury have nothing to do with the punishment; that is fixed by the law in the discretion of the court. Your duty alone is to determine the fact of innocence or guilt under the evidence and the law. The responsibility of the punishment is not with you and you will not allow it to unduly influence you in any way at all. It can be very heavily punished and it ought to be very heavily punished.] [12]

Verdict of guilty on which the prisoner was sentenced to imprisonment in jail for one year and eight months.

*Errors assigned* among others were (1) in refusing to quash the bill; (2) in refusing to give binding instructions for defendants on the ground that the offense was not committed in Adams county; and (7–12) above instructions, quoting them.

*F. E. Beltzhoover*, with him *Wm. Hersh*, for appellant.— The act of May 21, 1895, is unconstitutional: Quinn v. Cumberland Co., 162 Pa. 55; Com. v. Frantz, 135 Pa. 389; Payne v. School Dist., 168 Pa. 386; Boro. of Phœnixville Road, 109 Pa. 44; Com. v. Zacharias, 3 Pa. Superior Ct. 264; Com. v. Jones, 4 Pa. Superior Ct. 362; Baker v. Warren County, 11 Pa. Superior Ct. 170; Com. v. Beatty, 15 Pa. Superior Ct. 5; Com. v. Norton, 16 Pa. Superior Ct. 423; Com. v. Ayers, 17 Pa. Superior Ct. 352; Com. v. Mintz, 19 Pa. Superior Ct. 283; Moore v. Moore, 23 Pa. Superior Ct. 73; Com. v. Samuels, 163 Pa. 283.

The Adams county court did not have jurisdiction: Com. v. Fleming, 130 Pa. 138; Com. v. Hess, 148 Pa. 98; Com. v. Schmunk, 207 Pa. 544; Rex v. Burdett, 4 Barn. & Ald. 95; Com. v. O'Neill, 10 Pa. Dist. Reprs. 227.

The charge of the court was erroneous, unfair and misleading: Cauffman v. Long, 82 Pa. 72; Phila. Trust, etc., Co. v. R. R. Co., 177 Pa. 38; Com. v. Winkelman, 12 Pa. Superior Ct. 497; Larzelere v. Tiel, 3 Pa. Superior Ct. 109; Heydrick v. Hutchinson, 165 Pa. 208; Linn v. Com., 96 Pa. 285; Coxe v. Deringer, 82 Pa. 236.

*J. S. Black* and *W. C. Sheely*, with them *R. E. Wible*, district attorney, *J. L. Williams* and *Joseph P. McCullen*, for appellee.—The act of 1895 is constitutional: Com. v. Muir, 1 Pa. Superior Co. 578; Com. v. Jones, 4 Pa. Superior Ct. 362; Com. v. Sellers, 130 Pa. 32; Powell v. Com. 114 Pa. 265.

The offense charged was committed in Adams county, because the counterfeit label was used and displayed in Adams county and there alone: Com. v. Gillespie, 7 S. & R. 469; Dannemiller v. Kirkpatrick, 201 Pa. 218; Miller v. Seaman, 176 Pa. 291; Jones v. Jennings, 168 Pa. 493; Simpson v. Karr, 22 Pa. Superior Ct. 8; Wilson v. Belles, 22 Pa. Superior Ct. 477; Commonwealth v. Schmunk, 22 Pa. Superior Ct. 348; s. c. 207 Pa. 544; Commonwealth v. Leslie, 20 Pa. Superior Ct. 529.

OPINION BY ORLADY, J., November 20, 1905:

The defendant was indicted and convicted of knowingly and unlawfully using and displaying a counterfeit, or imitation, of the label, trade-mark, symbol or private stamp of the Cigar Makers' International Union of America, in violation of the provisions of the Act of May 21, 1895, P. L. 95, as amended by Act of May 2, 1901, P. L. 114, and Act of April 3, 1903, P. L. 134. The title to the original act is as follows: "An act to provide for the adoption of trade-marks, labels, symbols or private stamps by any incorporated or unincorporated association or union of workingmen, and to regulate the same." It is contended by appellant that the indictment should have been quashed and the judgment on the verdict arrested, on his motion as filed, for the reason that the third section of the act of 1895, and as subsequently amended, is unconstitutional in that it creates a new offense and provides for the imposition of a penalty in violation of article III, sec. 3, of the state constitution, viz.: " No bill shall be passed containing more than one

subject which shall be clearly expressed in its title," the argument being that the words, " and to regulate the same," can only refer to the adoption of the trade-marks, and not to the violation of the provisions of the statute. The contention that the title to the bill is defective because it does not give adequate notice of its contents is not a new one, having been urged upon this court in a number of cases. See Commonwealth v. Muir, 1 Pa. Superior Ct. 578 ; s. c. 180 Pa. 47 ; Commonwealth v. Moore, 2 Pa. Superior Ct. 162 ; Commonwealth v. Jones, 4 Pa. Superior Ct. 362 ; Baker v. Warren County, 11 Pa. Superior Ct. 170 ; Commonwealth v. Beatty, 15 Pa. Superior Ct. 5 ; Commonwealth v. Norton, 16 Pa. Superior Ct. 423 ; Commonwealth v. Ayers, 17 Pa. Superior Ct. 352 ; Commonwealth v. Mintz, 19 Pa. Superior Ct. 283 ; Stroudsburg Boro. v. Shick, 24 Pa. Superior Ct. 442. Measured by the standard determined by these cases the title to this statute is sufficiently clear to give notice of the legislative purpose of those who may be specially interested therein, and so as reasonably to lead to an inquiry into its body. The words used in the title are certainly clear and intelligible enough to direct the attention of anyone who contemplated using or displaying a counterfeit or imitation of a trade-mark, label, symbol or private stamp to an examination into the provisions relating thereto. " To regulate means to lay down a rule by which a thing shall be done ; to prescribe a rule by which a business or trade shall be conducted : " Anderson's Law Dict. " To adjust by rule, method or established mode ; to direct by rule or restriction ; to subject to governing principles or laws : " 2 Bouvier's Law Dict. (Rawle Rev.). In McVey v. Brendel, 144 Pa. 235, the Supreme Court say : " There is no rule of morals or business upon which a man can defend himself in the preparation and use of spurious labels." The title directs the attention of all who use or display trademarks, whether with innocent intention or guilty purpose, to an examination of the act. The assignments relating to the invalidity of the title of the act are not sustained.

The arrangement in this case was to deliver the goods at a railroad station in Adams county, hence the title to the property did not pass upon delivery to the common carrier in York county but was incomplete until actually delivered at the place

of consignment: Dannemiller v. Kirkpatrick, 201 Pa. 218.; Commonwealth v. Schmunk, 22 Pa. Superior Ct. 348 ; s. c., 207 Pa. 544. The answer of the trial judge to the defendant's request for binding instructions at the close of the commonwealth's case was fully justified by many decisions in addition to the ones above cited, and the second assignment of error is overruled.

The charge of the court to the jury is open to several objections, notably in the excerpts embraced in the seventh, eighth, ninth and twelfth assignments. Some expressions are extravagant in their character, and they would necessarily affect the judgment of the jurors adversely to the defendant by tending to belittle the defense. While the charge was replete with caution that the jury should give the defendant the benefit of all reasonable doubt, it was manifest from the words employed and illustrations used that the trial judge strongly favored a verdict of guilty: Penna. R. R. Co. v. Berry, 68 Pa. 272; Pierson v. Duncan, 162 Pa. 187 ; Heydrick v. Hutchinson, 165 Pa. 208 ; Cauffman v. Long, 82 Pa. 72.

It is well settled that it is not error for a judge in his charge to a jury to express his opinion upon the facts if done fairly, provided he does not give a binding direction or interfere with the province of the jury: Com. v. Orr, 138 Pa. 276. But in every case which justifies a judge in expressing an opinion the jury should be directly informed that it is his opinion, and that they are not to be bound by it. And the expression of opinion should always be made with the utmost fairness and absence of partisanship. To say to the jury: " If you believe Jackson and Stine in corroboration of that fact, then he is not guilty. If these men are telling the truth, he is not guilty ; but can you believe them ; as reasonable men, can you believe them ? " This practically eliminated their testimony from the case, and at the same time destroyed the testimony of the defendant so far as it was corroborated by them. If the jury believed the testimony of the defendant he was entitled to a verdict of not guilty, independent of the credibility of the other witnesses.

To say of a witness for the commonwealth, " Mr. Hershey is one of the most reputable citizens, as you all know, a man who has been in business for some time in the borough of York

Springs," was giving this witness a standing with the jury entirely independent of, if not at variance with, the evidence in the case. The assumption of facts by the court, giving credit to, or detracting from, special witnesses, coupled with the statement that " the responsibility of the punishment is not with you, and you will not allow it to unduly influence you in any way at all ; it can be very heavily punished, and it ought to be very heavily punished, but the responsibility of that is not with you, it is entirely with the court," indicated that the trial judge was impressed with a belief of the defendant's guilt. It may be correct as a matter of ethical judgment to say that it is the bounden duty of labor to organize for its protection, but to say that " if they fail to do so their truest interests might soon be crushed under the pitiless juggernaut of conscienceless capital," is a form of expression more appropriate on a public rostrum than from the judicial bench. Taken as a whole the charge was calculated to mislead, and was not an unprejudiced and deliberate presentation of the law and dispassionate submission of the facts to the jury. It gave undue prominence to the testimony of Hershey, a witness for the commonwealth, and impeached the testimony of the two witnesses for the defendant. Such statements by the court exert an influence which cannot be estimated : Goersen v. Com., 99 Pa. 388 ; Commonwealth v. Goldberg, 4 Pa. Superior Ct. 142; Commonwealth v. Winkelman, 12 Pa. Superior Ct. 497.

When a case is to be submitted to the jury the credibility of witnesses and the weight and effect of their testimony is exclusively within the province of the jury, and the trend of all our decisions is to watch over and protect zealously the legitimate powers of the jury by preventing the trial judge from overstepping the line which separates law from fact. The purpose of a charge is to state and explain the law, not to carry on a process of general reasoning which tends to influence the jury in either direction. For these reasons the defendant did not have that fair and impartial trial which our laws guarantee to every citizen.

The judgment is reversed and a venire facias de novo awarded.