## Commonwealth v. Wolfe, Appellant.

*Criminal law and procedure—Charge of the court—Evidence—Preponderance — Witnesses — Numerical superiority — Interest — Inadequacy of charge.*

Upon an indictment charging the defendant with receiving stolen goods, where the Commonwealth produced a large number of witnesses, and the defendant but few, it was not error for the court to direct the attention of the jury to that fact, if in the same connection it was explained that the jury might "believe one man as against a thousand."

While the preponderance of proof does not mean the number of witnesses merely, nevertheless, number is undoubtedly an element that lends credibility to the statement of witnesses.

The use, by the court, of the expression "giving everybody the benefit of the doubt" is harmless if it applied impartially with reference to all the witnesses in the case, and was followed by a discussion of all the other features affecting the credibility of the witnesses.

It is proper to instruct the jury to examine the testimony to see whether the witnesses were disinterested, and such an instruction does not imply that the jury should find they were interested and therefore to be discredited.

The charge of the court is not necessarily inadequate because it deals at great length with the Commonwealth's testimony and briefly with that of the defendant. This is particularly true in a case where the court carefully explained that, from the nature of the defense presented, it was impossible that it could be the subject of extended discussion and explanation.

Argued April 11, 1923.    Appeals, Nos. 65, 66, 67, 68 and 69, Oct. T., 1923, by defendant, from judgment of O. and T. Phila. Co., April Sessions, 1922, Nos. 15, 17, 18, 19 and 20, on verdict of guilty in the case of Commonwealth of Pennsylvania v. I. Austin Wolfe.    Before PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ.    Affirmed.

Indictment for receiving stolen goods.    Before STERN, J.

The opinion of the Superior Court states the case.

Verdict of guilty upon which judgment of sentence was passed.    Defendant appealed.

*Error assigned* was the charge of the court, as a whole and by various quoted parts.

*John R. K. Scott,* and with him *G. Coe Farrier, B. D. Oliensis,* and *Shapiro & Levinthal,* for appellant.—The question for the jury is not on which side are the witnesses most numerous, but what testimony is to be be-

lieved: Braunschweiger et al. v. Waits, 179 Pa. 47; Thomas v. Law, 25 Pa. Superior Ct. 19.

When a reasonable doubt exists, it is the property of the defendant and must result in an acquittal: Com. v. Rider, 29 Pa. Superior Ct. 621; Com. v. Duffy, 49 Pa. Superior Ct. 367; Com. v. Colandro, 231 Pa. 343.

If the testimony on one side of a controverted question of fact is made prominent and conspicuous in the charge, common fairness requires that equal prominence should be given the opposing testimony having a contrary tendency: Reichenbach v. Ruddach, 127 Pa. 564; Com. v. Meads, 29 Pa. Superior Ct. 321; Com. v. Garvey, 65 Pa. Superior Ct. 56.

*Lemuel B. Schofield,* Assistant District Attorney, and with him *Samuel P. Rotan,* District Attorney, for appellee.

OPINION BY TREXLER, J., July 12, 1923:

The defendant, the owner of a pawnshop, was convicted of the crime of receiving stolen goods knowing them to have been stolen.

There are four matters that are assigned for error. (1) The first question as put by the appellant is "Is the numerical superiority of the Commonwealth's witnesses a proper test for the ascertainment of the truth, where such Commonwealth's witnesses are admitted accomplices?" The part of the charge to which this proposition is directed is as follows, "How are you going to tell who is telling the truth? Because, after all that is the crux of the case. You do not know Walker and do not know these men. How are you going to judge between them? The law lays down certain general rules on that subject and briefly I want to tell you what they are. In the first place, the law says that you should pay attention to the number of witnesses who say one thing and the number of witnesses who say the other thing, because if ten witnesses for example, tell you one fact and one wit-

ness tells you the other fact, it is more likely that ten people are telling the truth than that one person is telling the truth. That is not conclusive and it does not necessarily follow, because you might be willing to and should believe one man as against a thousand people who tell you the opposite. You have the right to pin your faith on one man, but I say that generally speaking, and giving everybody the benefit of the doubt, it is more likely that if a number of people tell you something the truth lies with them rather than with one person who says that what those people are telling is not true." When taken in connection with the remainder of the charge, we see no harm in the above instruction. A careful reading of the above-quoted part discloses no direction by the court that the jury should decide this case on the number of witnesses. The court merely directs the jury to pay attention to the number for it states "it is more likely that ten people are telling the truth than that one person is telling the truth." Number is undoubtedly an element that lends credibility to the statement of witnesses. Notwithstanding the departure from the old numerical system (see Wigmore, section 2032; Chamberlayne, section 988) number may still be an element to be considered, but it cannot be regarded as a determining factor, apart from the other matters involved. The preponderance of proof does not mean the number of witnesses merely. As was said in Braunschweiger v. Waits, 179 Pa. 47, "the weight of evidence is not a question of mathematics, but depends on its effect in inducing belief." The mistake in that case was that the court instructed the jury that the plaintiff standing alone and not being corroborated, must fail in his contention if the two persons contradicting him were deemed equally credible. The lower court in the instant case was careful to qualify the statement by saying that the jury could believe one witness as against a thousand. The lower court emphasized the fact that it was merely dealing in the likelihood of the truth being spoken by the greater number and that number was not

conclusive. It will be noticed the judge was referring to this as one of the general tests which were to be employed by the jury in considering the testimony. Thereafter he expatiated on the interest of the witnesses in the subject-matter; their manner of testifying; the appearance that they made; the contradictory statements they may have made at other times; the scrutiny to be given the testimony of witnesses who are accomplices, that it was unsafe to convict on such testimony; and lastly, the plausibility of the stories submitted. As to the latter part of the assignment of error, wherein the appellant states that these witnesses were admitted accomplices, that objection may be answered by saying that the court did not refer to the subject of accomplices in this connection but afterwards charged the jury that they should not convict upon the uncorroborated testimony of the accomplices. For that branch of the case a separate paragraph was reserved in which the subject was treated in the manner laid down in the various authorities.

(2) If we recur to the portion of the charge above quoted, it will be noticed that the court uses this expression, "You have the right to pin your faith on one man, but I say that generally speaking, and giving everybody the benefit of the doubt, it is more likely that if a number of people tell you something the truth lies with them rather than with one person who says that what those people are telling is not true." The portion objected to and which is the basis of the second assignment are the words "giving everybody the benefit of the doubt." We confess we do not exactly know what thought the court intended to convey by the phrase "giving everybody the benefit of the doubt." In its opinion refusing a new trial it says, "the thought expressed is merely that if we consider only numbers of persons, other things being equal, and if we give to each one the benefit of the doubt, then it is more likely that the truth lies with the greater number." We think the expression was harmless for what-

ever was meant, it applied to all the witnesses in the case; it was everybody who was to have the benefit of the doubt, but we do not think it could convey any thought to the jury that would be detrimental to the defendant. If this stood alone it might produce some confusion, but it was followed, as we have before told, by a discussion of all the other features affecting the credibility of the witnesses.

(3) The third assignment is "Is it proper to submit to the jury the question of the interest of the defendant's witnesses, in the absence of evidence on that point?" In its charge the court stated, "It is for you to say whether you believe that Donde and Dickman, or whoever it was, made these other statements to Bautowski and Cohen and the barber and Wolfe and the other people to whom they are said to have been made. You will have to consider the credibility of those latter witnesses, their interest in the case, whether they are trying to tell the story to aid Wolfe and discredit these witnesses or whether they are honestly telling you what is so." We do not see that there was any error in this. The court was merely directing the jury to examine the testimony to see whether these witnesses were disinterested; whether they merely were in court for the purpose of telling the truth or whether their actions or their relation to the defendant made it the duty of the jury to weigh their testimony with care. Defendant states it is wrong to assume a fact which is not authorized by the evidence. The attorney for the Commonwealth points out in his argument that Dobkin and Wishnov were both brothers-in-law of the defendant. Dobkin was also his bondsman and Wishnov had himself been accused by Dickman, whom he sought to contradict, of having knowingly disposed of certain stolen property in the defendant's pawnshop. Butowsky lived next door to Dobkin and voluntarily called in a lawyer named Weiss, the barber Deishowitz, and the defendant to be present when Donde was supposed to have made the contradictory state-

ments. Kohn admitted he was a friend of the defendant and went out of his way to question Donde in the interest of Wolfe. Moreover, Butowsky, Dobkin, Wishnov, and Murray according to the testimony of one of the Commonwealth's witnesses, were all present in the defendant's law office on one occasion when the defendant instructed the witnesses how to testify in court. It was, therefore justifiable for the learned trial judge to call the attention of the jury to the fact that they were to determine if these parties were interested in behalf of the defendant and if so, how far that affected their credibility. The court submitted to the jury "whether these witnesses were trying to aid the defendant and discredit the witnesses of the Commonwealth or whether they were honestly telling the truth or what they knew to be true." We do not think that the remark of the court coupled with the rest of the paragraph that the jury was to consider the credibility of these witnesses and their interest in the case assumed that the jury must find that they were interested and therefore discredit them.

(4) The fourth assignment is to the inadequacy of the charge that it presented prominently and favorably the Commonwealth's side of the case and inadequately and less favorably the defendant's. This requires no extended comment. The charge of the court occupies twenty-seven printed pages, and reviews the testimony at great length and the judge's explanation as to why he gives more time to the Commonwealth's testimony than to defendant's is so reasonable that it furnishes an answer to the assignment of error, "You have the denial of Wolfe. It is only fair to say that that is all you can have, because if it be true that Wolfe was not there, and he says he was not, if it be true as he says that he was never there when any of these articles came in, if it be true and he never knew anything about any of these transactions, what can he say except just that? If a man is charged with crime, whether by one person or ten persons or fifty persons, and he was not there, all he can say is 'I know

512, (1923).]        Opinion of the Court.

nothing about it and was not there,' and I emphasize that because I do not want you to labor under the thought that because it has taken me a long time to tell you what each of the clerks said and to build up this case against him, I am doing Wolfe an injustice by just saying Wolfe denies it and passing over his story in just a word or two." Notwithstanding this explanation the court did set out the narration of Wolfe with some detail.

All the assignments are overruled, the judgment is affirmed and the record remitted to the court below and it is ordered that the defendant appear in the court below at such time as he may be there called and that he be by that court committed until he has complied with the sentence or any part of it which had not been performed when the appeal in this case was made a supersedeas.