Commonwealth of Pennsylvania *v.* Scutack,
Appellant.

Argued May 2, 1932.

Before Trexler, P. J., Keller, Gawthrop, Cunningham, Baldrige, Stadtfeld and Parker, JJ.

*Ben. Paul Brasley,* and with him *J. Julius Levy,* for appellant.

*Otto P. Robinson,* Assistant District Attorney, and with him *John J. Owens,* District Attorney, for appellee.

Opinion by Baldrige, J., July 14, 1932:

This defendant and another man were indicted. The jury acquitted the other defendant and convicted this appellant of aggravated assault and battery.

On September 15, 1931, the day of the primary election, the defendant, a candidate for reelection as con-

stable of the sixth ward of the Borough of Old Forge, Lackawanna County, went to the election booth in the first district of that ward, with a deputy constable and two other men, a few minutes before seven o'clock in the morning. The defendant and his deputy were both in uniform and stated that they were investigating a report received of disorder. Under the testimony offered by the Commonwealth, when the defendant arrived at the election booth, he informed the officers of the election that he "wanted the machine taken down and jammed." A heated discussion followed, which terminated in the defendant's pulling his gun and shooting Patrick Giordano, captain of police, in the leg. The appellant alleges that he desired only to examine the public counter on the voting machine and was attacked by Giordano and others, and was acting in self-defense.

The six assignments of error all go to the charge of the court, which, it is alleged, was erroneous, inadequate and prejudicial.

The first complaint relates to the instructions as to reasonable doubt. The court instructed the jury as follows: "In both of these cases the Commonwealth must prove its case beyond a reasonable doubt. That does not mean every possible doubt or anything of that sort, but it means that you start with the presumption that the man is innocent, and he must be proven guilty by such evidence that in the ordinary affairs of life you would not hesitate to act." In two other portions of the charge, the jury were reminded that if the testimony raised a reasonable doubt in their minds, the defendant was entitled to acquittal. At the end of the charge the trial judge asked the counsel: "Have I misstated the evidence in any way or left out any essential matter of law?" to which inquiry there was no response. The defendant, however, took formal exceptions (1) on the question of reasonable doubt and the definition of the court thereon; (2) on the subject

of character testimony; (3) on the fact that the court emphasized the Commonwealth's theory and minimized the defendant's theory and emphasized the Commonwealth's testimony and minimized the defendant's testimony; (4) to the court's statement on the law of self-defense.

There is no generally accepted definition of "reasonable doubt." The trial judge is not required, with the possible exception of a homicide case, to explain to the jury the legal meaning of that expression, although it may be desirable to do so. If a further elucidation is wanted, request should be made to the court, and then, if refused, a more serious question arises: Com. v. Berney (No. 2), 262 Pa. 176; Com. v. Dougherty, 95 Pa. Superior Ct. 305. We are of the opinion that defendant was not in a position to object to the definition given. If it lacked clarity, he could have made a formal request for more specific instructions when he was invited so to do. Moreover, the court, as we read his language, instructed the jury, in effect, that before convicting the defendant, they must be convinced of his guilt to such an extent that they would have no hesitancy or indecision in acting upon that conviction in the ordinary affairs of life. This was sufficient to relieve the trial judge of reversible error. See Com. v. Baker, 93 Pa. Superior Ct. 360.

That part of the charge relating to character evidence complained of is as follows: "Also there is character evidence in both of these cases, and sometimes character evidence of itself will raise a reasonable doubt in the minds of a jury, that is, if you think it so impresses you that you believe that a man of such good character would not commit the crime that he is charged with you may acquit if that raises a reasonable doubt. There is always a first time, however, for a man to commit any crime, and it is for you to say what weight you will give to this testimony." Unquestionably, it would have been better for the court

to inform the jury that good character in a criminal case is a substantive and positive proof. See Com. v. Mack, 92 Pa. Superior Ct. 165. But we think the court substantially defined the defendant's rights and the benefits that inured to him from the evidence of his good character. No doubt, the jury understood that if the evidence of good character raised a reasonable doubt in their minds, the defendant was entitled to that benefit, and it would be their duty in such a case to find him not guilty. The latter part of the instructions was not objectionable as we approved of the charge to the jury in the case of Com. v. Griffin, 42 Pa. Superior Ct. 597, 600, where the trial judge said: "Of course, all persons have at some time been persons of good character, and many defendants in courts of justice, up to the time of the commission of the offense of which they are convicted, had a good character, and you will take this into consideration when you come to determine upon the weight and applicability of the testimony as to the good character of the defendant." That language is of the same general character as used by the trial judge below.

The appellant maintains further that the court failed to charge on the doctrine of the presumption of innocence. The court in its instructions said: "But it means that you start with the presumption that the man is innocent." That was a sufficient reference to this defendant. It was his rights that were being considered, and that instruction was as adequate as in the charge in the case of Com. v. Faulknier, 89 Pa. Superior Ct. 454, 458. Furthermore, we have held that the omission to charge as to the presumption of innocence in the absence of a request to do so is not reversible error: Com. v. Holgate, 63 Pa. Superior Ct. 246. See also Com. v. Corrie, 302 Pa. 431, 437.

Nor do we find the charge fatally inadequate as to the instructions given relating to aggravated assault and battery. The jury was told that if the defendant

''pulled that revolver and was flourishing it around with intent to put other people in fear when he himself was in no danger, or had no reason to apprehend danger, and in so doing he shot toward the floor and hurt another man, or shot carelessly or wantonly, and the wound resulted, if you believe that that was the way the thing happened you would be perfectly justified in finding him guilty of the second count, that of aggravated assault and battery.'' We think that portion of the charge, as well as that which relates to the rule of self-defense, is not open to serious criticism.

Considering the entire charge, we think it was not prejudicial. The defendant was referred to as ''this large man,'' but the other man who was indicted with him was a small man, and was referred to as such; they both had foreign names; and the description was used to identify the defendant, and was not made in a harmful manner. The charge was brief, but we cannot say that it was inadequate, and if, as we have already pointed out, the defendant was dissatisfied with the lack of explanation to the jury, he could have requested the court for further instructions.

A careful examination of the charge of the trial judge convinces us that the jury were instructed with sufficient clarity of the issues involved so that they understood the different phases of the case, and the law applicable thereto. It is impossible to use stereotype phrases in charging a jury, and the trial judge is not required so to do. The jury evidently concluded, with ample justification, that there was no provocation for the defendant to draw his gun and recklessly shoot in the polling booth. Disturbances of this character, created by officers whose duty it is to maintain peace and order, especially in places where citizens go to exercise their rights of franchise, should be discouraged. Fatal results may have followed this unwarranted conduct.

Taking this record as a whole, we are not convinced that there is reversible error.

Judgment affirmed.