Commonwealth *v.* Kelly, Appellant.

Argued October 21, 1938.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and RHODES, JJ.

*Louis F. McCabe,* for appellant.

*Franklin E. Barr,* Assistant District Attorney, with him *Charles F. Kelley,* District Attorney, for appellee.

OPINION BY CUNNINGHAM, J., January 31, 1939:

This appeal by Clement Kelly from the judgment and sentence following his conviction of having broken and entered the drug store of Herman Finkelstein, by night and with intent to steal, is based solely upon alleged errors in the charge of the trial judge.

Counsel for appellant has summarized his ten assignments of error under the following statement of "Questions Involved:"

"1. Was the charge of the court on reasonable doubt to the effect that if the jury cannot form a conscientious conclusion in their own minds that the defendant is guilty, their duty is to acquit him, reversible error?

"2. Was the charge of the court argumentative to the extent that it deprived the defendant of a fair and impartial trial?"

An understanding of the issues of fact which arose out of the evidence will be helpful in disposing of the questions of law now before us.

The night watchman of the drug store, located at 329 North Broad Street, Philadelphia, was the leading witness for the Commonwealth. He testified that between 3:00 and 3:30 A.M. on the morning of February 12, 1938, while on duty and sitting in the store reading, he heard someone break the glass in a side window, pull the window up and down several times, and say to some person on the outside, "give me a boost;" and then saw a man crawl in through the window. As soon as the intruder had taken a few steps in the store, which was lighted with a 75-watt electric light, the watchman fired

five shots at him. When the shots were fired he uttered an exclamation, sprawled on the floor and over a bench, got up, broke more glass with a revolver he had in his hand and jumped headfirst out of the window.

The incident occurred on a rainy night; the stranger wore a dark overcoat but no hat; and his hair was hanging down over the side of his face. At a second hearing, when appellant was dressed in an overcoat with his hair pulled down over the side of his face, the watchman positively identified him as the intruder and repeated his identification at the trial. An hour later the same morning, a detective arrested appellant at the Lankenau Hospital, where he had gone for treatment of second degree lacerations of the left forearm and two small scratches on the right wrist; and a few minutes later the same officer found appellant's overcoat, still damp and with blood on the sleeve, in the dining room of appellant's home located a block from the hospital. The evidence adduced by the Commonwealth was ample, if believed by the jury, to sustain the conviction.

Appellant's defense was an alibi. He testified he was out with his girl until ten o'clock that night; later he went to a taproom and returned home around two o'clock. Having no key, he wakened his uncle by throwing stones against the window. On entering the house, he listened to the radio until a little after three, when he went out to the kitchen to eat. In attemping to close a kitchen window which had swung open he accidentally forced his hand through the glass and cut it, bandaged it up with a towel, attempted without success to get his overcoat on over the towel, left his overcoat at home, and went to the hospital for treatment. He was corroborated by his uncle as to his return home about two o'clock that morning, and as to the cutting of his hand on the kitchen window.

1. The trial judge did not give the jury a definition of "reasonable doubt," nor was he required to do so in a case of this kind, in the absence of a specific request:

*Com. v. Scutack,* 105 Pa. Superior Ct. 524, 161 A. 610. After reviewing the evidence on both sides he said: "This defendant, like every defendant, comes to the bar of the court presumed to be innocent. His guilt must be proven to the satisfaction of the jury, *beyond a fair and reasonable doubt,* and that turns on the validity of the identification, the corroborating circumstances, the factual circumstances, as to whether they are convincing to you, after taking into consideration the defendant's denial and the alibi that has been set up by the evidence as testified to by the uncle." (Italics supplied)

After adequate and correct instructions relative to the measure of proof required in support of an alibi, he continued:

"But, even although the alibi, as an affirmative defense, is not established by the preponderance of the evidence, yet, if, on the whole case, including it, you are not satisfied that he is the man, you are not so satisfied beyond a fair and reasonable doubt, then, the man must be acquitted."

These portions of the charge are not complained of as inadequate. The assignments upon this branch of the case are based upon a subsequent paragraph reading:

"The thing turns on the question of identification. If this identification has been made to your satisfaction and you have no *moral hesitancy* in coming to that conclusion, because of all you have heard on both sides of the case, then, your duty is to convict him. If, however, considering all the elements that have been produced here in the case, you cannot form a *conscientious conclusion* in your own minds that he is the man, why, then, of course, it is your duty to acquit him. Now, there is the long and short of the case." (Italics supplied)

At the conclusion of the charge a colloquy ensued between the trial judge and counsel for appellant with relation to the "impression" the former intended the jury to receive by the use of the phrase "conscientious

conclusion." It ended with this statement by the trial judge: "I don't want any man convicted in this court room unless the jury is wholly satisfied that the man is guilty."

In our opinion, the contention in behalf of appellant that the jury was not given such a description of the burden of proof resting upon the Commonwealth throughout the trial as fully protected his rights is without foundation. For recent cases on this subject see *Com. v. Barrish,* 297 Pa. 160, 146 A. 553; and *Com. v. Apriceno,* 131 Pa. Superior Ct. 158, 171, 172, 198 A. 515.

2. The first exception taken by counsel for appellant at the conclusion of the charge reads:

"Now, then, I would like to take an exception to your Honor's charge, generally, because of what I would characterize as a rather slight reference to all of the testimony adduced on behalf of the defendant and because of what I thought was an improper emphasis on the testimony of the Commonwealth."

In general, the principle here invoked is that it is error for the court in reviewing the evidence to give undue prominence to that of the Commonwealth and neglect that of the defendant: *Com. v. Goldberg,* 4 Pa. Superior Ct. 142.

We are not convinced upon a consideration of the charge as a whole *(Com. v. Glenn,* 321 Pa. 241, 247, 183 A. 763; *Com. v. Becker,* 326 Pa. 105, 112, 191 A. 351) that the trial judge gave undue prominence to the Commonwealth's testimony, or neglected a fair and comprehensive review of appellant's. Compare *Com. v. Mellon,* 81 Pa. Superior Ct. 20, 23, 24; *Com. v. Wolfe,* 81 Pa. Superior Ct. 512.

The real complaint, as disclosed by the brief in behalf of appellant, is that the charge in several instances was an argument in support of the Commonwealth's contentions. In *Com. v. Watson,* 117 Pa. Superior Ct. 594, 178 A. 408, we had occasion to consider a similar criti-

cism and there said: "The main purpose of a charge is to set forth and explain the law to the jury, and not to present an argument for the conviction of the defendant. *Com. v. Meads,* 29 Pa. Superior Ct. 321. The trial judge may review the evidence and express an opinion thereon and may refer dispassionately to its points of strength and weakness, but he must plainly and clearly leave the decision of facts and inferences to be drawn therefrom entirely to the jury: *Com. v. Green,* 292 Pa. 579, 141 A. 624; *Com. v. Nafus,* 303 Pa. 418, 154 A. 485; *Com. v. Stabinsky,* 313 Pa. 231, 169 A. 439; *Com. v. Edwards,* 318 Pa. 1, 178 A. 20."

It is also correct to say that "A trial judge has a right to express to the jury his opinion as to the credibility of evidence, provided he does not withdraw it from the jury but leaves the matter as one of fact for them to decide": *Com. v. Fahey,* 113 Pa. Superior Ct. 598, 608, 173 A. 854. See also *Com. v. Wiswesser,* 124 Pa. Superior Ct. 251, 259, 188 A. 604.

The specific grounds of complaint in the present case may be illustrated by reference to several portions of the charge. The watchman testified he fired five shots at the man who entered the store through the window; that the person "fell and hollered, 'Oh,' laid there for a few seconds" and then "smashed out a pane of glass" and escaped. Appellant had no bullet wounds when arrested. A natural inquiry for the jury was the inference to be drawn from the utterance of that exclamation by the intruder. Did it mean he had been hit by a bullet, or was it a ruse to deceive the watchman? In reviewing and commenting on the testimony of the watchman the trial judge said: "He (the witness) heard the defendant say 'Oh,' or something like that, apparently as though he had been shot, but, from the subsequent developments in the case, you may conclude that the purpose of hollering 'Oh,' was to throw this prosecuting witness off his guard for a moment." The trial

judge did not express any opinion with relation to which inference should be drawn.

Again, in referring to the positive identification of appellant by the watchman, the trial judge asked: "Well I should suggest to the jury and I do suggest to the jury, would any reasonable, rational man undertake to make the positive identification that this man has, well knowing, as he must know, the possible consequences to the defendant, unless he were positive;" but, in immediate connection with that inquiry, added, "Yet he may be quite positive but he may be mistaken. That is what you have to decide."

As above stated, appellant endeavored to explain the wounds for which he was treated at the hospital by saying he cut himself while closing a window at his home. He confined himself in his testimony to a wound on only one hand. The trial judge in commenting upon his testimony pointed out that the testimony for the Commonwealth was to the effect that appellant was wounded upon the right wrist as well as the left forearm. His comment was: "In other words, while he said that just one hand or forearm was cut, there appears to be evidence that the other one was cut, too. Now, it seems to me that that has some significance on this question. I am not going to suggest to you what significance it has, it certainly has some significance, you have to use your own judgments about what that has to do with the case."

We have quoted at some length from the comments of the trial judge assigned for error because, as stated in *Com. v. Watson,* supra, it is the privilege, and frequently the duty, of a trial judge to refer to the "points of strength and weakness" in the testimony upon both sides, provided he does so in a "dispassionate" and judicial manner, and provided the final decision of every issue of fact is squarely left to the jury. As we read the comments in this case, they were dispassionate and justified by the evidence. The ultimate issue was one

of identity and that issue was submitted to the jury by the trial judge without any expression of his own opinion.

We are not convinced that any reversible error was committed in the charge. The assignments of error are severally overruled.

Judgment affirmed.