## Commonwealth *v.* Saldutte, Appellant.

Argued May 8, 1939.

Before KELLER, P. J., CUNNING-
HAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT,
JJ.

*Harry Alan Sherman,* for appellant.

*C. E. Pruger,* Assistant District Attorney, with him

*Andrew T. Park,* District Attorney, and *Louis L. Kaufman,* for appellee.

Opinion by Keller, P. J., June 27, 1939:

The appellant, Eugene Saldutte, was indicted, tried and convicted of breaking and entering the shop or store of one Andrew Kramer, with intent to commit a felony.[1]

His main ground for reversing the judgment is that the evidence identifying him as one of the men who broke into Kramer's shop or store in the early morning of March 31, 1938, was not sufficient in quantity or certainty to support his conviction. There is no merit in the position.

Andrew Kramer, who conducts a confectionery store in Library, Allegheny County, Pa., was awakened about 2:30 o'clock in the morning of March 31, 1938 by the ringing in his house of a burglar alarm showing that someone was in his storeroom, located about 125 feet away. He hurriedly dressed and went to his store, and his wife turned on a switch which lighted a 100 watt electric light in the store. He entered the building and found three men there, who had broken into the front of the store. He shot and wounded one of them, (Joseph Wirth), was hit over the head by a tire iron in the hands of another (James McCann), and he testified that the defendant, Saldutte, was standing directly under the light, pointing a gun (revolver) at him or letting on he was pointing a gun, just before one of them threw something at the light and broke it. Though pretty badly hurt he followed them outside and saw them get into an automobile, which was driven away. They got no booty.

He informed the police of the occurrence and to their request for a description of the men, he told them that he didn't think he could identify them, or give a suffi-

---

[1] Act of March 13, 1901, P. L. 49, amending Act of April 22, 1863, P. L. 531, 18 PS sec. 3042.

cient description of them by which they could be identified.

However, several months later, on confronting Mc-Cann and Saldutte he immediately and positively identified them as two of the men in the store that morning, and never wavered or showed any hesitancy in his identification. In his testimony on the trial, he said, "I told [Detective Ritz] that I didn't think I could identify them, but when I saw them I could. The minute I saw them I could;" and again, speaking of the defendant, he said on cross-examination: "No I didn't describe him. I didn't know his name. If I did know him they wouldn't have to look for him." Q. "Why didn't you describe him? Didn't they ask for a description?" A. "Yes sir." Q. "And you said you couldn't describe them, is that right?" A. "That is right. After I seen them I could describe them all right."

It is clear that although Kramer was not able to describe the intruders in such a way as to identify them to the detectives, the incidents were clearly fixed in his mind and as soon as he confronted McCann and Saldutte he immediately recognized them and identified them as two of the men who broke into his store. Apparently Saldutte had a striking or unusual face, which while, perhaps, difficult to describe, would make an indelible impression on one's memory; for one of his own witnesses, testifying for him, said he had seen Saldutte on the South Side—a district of Pittsburgh—, but didn't know him; and then to the question, "What called your attention to him on the South Side?" he made answer, "Naturally I never did forget that face" (p. 79a).

In the meantime the detectives made inquiries and found that Wirth had been shot. They interviewed him and he implicated Dennison, McCann and Saldutte. They arrested Wirth, Dennison and McCann, all of whom pleaded guilty and were sentenced. Prior to pleading guilty they made a statement on May 19, 1938 in which they said Saldutte was also with them the

night of the breaking into Kramer's store, on the strength of which Saldutte was arrested. One of them had been driving the car in which they made their escape.

As before stated, Kramer recognized Saldutte as soon as he saw him, and testified positively that he was the man who stood directly under the light just before it was broken, pointing, or letting on he was pointing, a gun at him, which led him to shoot his own revolver three times, in the course of which Wirth was hit.

It is true that on the trial Wirth, Dennison and McCann testified that Saldutte was not with them that night, which was directly opposed to their prior statements, on the strength of which Saldutte had been arrested; and they attempted to give an explanation of their prior statements, discrediting their truth; but that was for the jury, and the jury evidently did not believe their testimony on the trial. The trial judge felt the same way and was not impressed with the truth of their testimony in court.

A defendant can be convicted on the positive identification of one witness: *Com. v. Goetz,* 129 Pa. Superior Ct. 22, 26, 195 A. 144; *Com. v. Lindner,* 133 Pa. Superior Ct. 196, 199, 2 A. 2d 518; *Com. v. Kelly,* 134 Pa. Superior Ct. 241, 243, 4 A. 2d 209.

This is not a case where the witness, on whose sole testimony the Commonwealth relies for identification of the defendant, on first being *confronted* by the defendant was unable to identify him, but later, on the trial, testified that he was the criminal. In this case, immediately on being confronted by the four men, he positively identified McCann and Saldutte, as two of the men in his store, and was, throughout, unshaken in his testimony.

The appellant has not complied with our rule No. 43, for his brief does not contain the assignments of error on which he relies. His earnestness has led us to overlook the omission—due probably to his inexperience in

appellate court practice—and we have had recourse to the original assignments filed in the Prothonotary's office. We will dispose of them, but not one by one.

The assignments to the remarks of the assistant district attorney in his closing address to the jury are not in accordance with the methods of procedure established by the Supreme Court for placing objectionable remarks of counsel on the record for review, as set forth in *Com. v. Wilcox,* 112 Pa. Superior Ct. 240, 250, 170 A. 455, affirmed by the Supreme Court in 316 Pa. 129, 173 A. 653. We have nevertheless examined them and in our opinion they did not warrant the withdrawal of a juror and the continuance of the case. The alleged reference to the "cadaverous face of this man," bore no implication that defendant was a hardened criminal, as argued by appellant's counsel. It referred rather to his pale, wan or ghastly[2] appearance, which it was proper for the jury to consider on the question of identification. So the alleged remark of the assistant district attorney, which was not brought on the record by direction of the court or by affidavit of counsel,—"Why didn't he prove where he was?" cannot in the circumstances here present be held to be a violation of Section 10 of the Act of May 23, 1887, P. L. 158, which provides, inter alia, "nor may the neglect or refusal of any defendant actually upon trial in a criminal court to offer himself as a witness......be adversely referred to by court or counsel during the trial." The defendant's presence at some place other than Kramer's store in Library, on the early morning of March 31, 1938, if he was elsewhere at that time, could have been proved by the testimony of witnesses other than himself. An unsupported alibi would not have availed him much. The objection of appellant's counsel at the trial seems to have been that because the three convicts, Wirth, Dennison and McCann, swore on the trial that the defend-

---

[2] See Century Dictionary and Webster's New International Dictionary.

ant was not with them when they broke into Kramer's store, he was not obliged to show where he was at the time. He was not *obliged* to prove an alibi, but the credibility of his witnesses was for the jury, who evidently did not believe them. On the other hand the rule is that if an accused resorts to the defense of an alibi—which was not done in this case—the facts established by the evidence in support of it must be such as to make it *impossible* that the defendant could have been present at the commission of the crime: *Com. v. Gutshall,* 22 Pa. Superior Ct. 269, 271, 272; *Com. v. Stewart,* 106 Pa. Superior Ct. 388, 391, 392, 162 A. 344.

There was no error in permitting Detective Kline to read on the trial that part of the statement obtained from Wirth, Dennison and McCann, signed, sworn to and initialed by each of them, which related to the Kramer job, and implicated Saldutte as the fourth man concerned in it, in contradiction and rebuttal of their testimony on the trial. Of course, if they had not testified on the trial contrary to the matters contained in their statement, their statement implicating Saldutte could not have been received in evidence. *Com. v. Epps,* 298 Pa. 377, 380, 148 A. 523, and the other cases relied on by appellant do not apply to the state of facts present in this case.

The other assignments do not require special mention. We have considered them and find them without merit.

The judgment is affirmed.