Commonwealth *v.* Ornato, Appellant.

Argued December 18, 1959. Before Rhodes, P. J., Gunther, Wright, Woodside, Ervin, and Watkins, JJ. (Hirt, J., absent).

*James P. McArdle,* with him *James E. McLaughlin,* and *McArdle, Harrington & McLaughlin,* for appellant.

*William Claney Smith,* Assistant District Attorney, with him *Edward C. Boyle,* District Attorney, for Commonwealth, appellee.

OPINION BY WOODSIDE, J., March 24, 1960:

Albert Ornato was tried with others before a jury in the Court of Quarter Sessions of Allegheny County on a number of charges involving bribery, corrupt solicitation, conspiracy and operating a lottery. He was convicted of corrupt solicitation. The jury either acquitted him or could not agree upon a verdict on the other indictments.

After the court below refused the defendant's motion for arrest of judgment and for a new trial, he was sentenced to pay a fine of $1000 and to undergo imprisonment of not less than one nor more than two years. He appealed to this Court contending that the evidence was insufficient to sustain the conviction and that there were trial errors entitling him to a new trial.

The Act of June 15, 1951, P. L. 585, §1, 19 PS §871, provides: ". . . if the court, after consideration of the entire record, shall decide that there is not sufficient evidence to sustain the conviction, it shall forthwith discharge the defendant and dismiss the case." Prior to the enactment of this statute the only relief the court could grant when it decided that there was not sufficient evidence to sustain the conviction was to grant a new trial. In considering the entire record under this statute, the court must ignore the evidence of the defendant and his witnesses which the jury had the privilege of rejecting, and must accept as correct *all* the evidence which supports the verdict, and must draw from the evidence such reasonable inferences as will support the verdict. *Commonwealth v. Wright,* 383 Pa. 532, 119 A. 2d 492 (1956).

Ornato was convicted of violating section 304 of the Act of June 24, 1939, P. L. 872, 18 PS §4304, which provides as follows: "Whoever, directly or indirectly, by offer or promise of money, office, appointment, em-

ployment, testimonial or other thing of value, or by threats or intimidation, endeavors to influence any . . . public officer, in the discharge, performance, or non-performance of any act, duty or obligation pertaining to such office, is guilty of corrupt solicitation, . . ."

There was evidence before the jury to support a finding that Ornato was engaged in an illegal lottery operation. Ornato was arrested on August 21, 1956, and again on September 21, 1956, for operating a lottery at his residence, 1904 Fifth Ave., Pittsburgh. John B. James, a Pittsburgh policeman and one of the arresting officers, testified that on the way to the police station after the last arrest, Ornato asked him "if there was any way we could forget about this particular case," and "said that he was all right downtown, there was no reason why him and I couldn't get together." The defendant then suggested to Officer James that he (James) and Tony Grosso should get together. The same evening Ornato called James at his flower shop, and suggested arranging an appointment with Grosso. The officer accepted the offer, and according to arrangements met Ornato at 2 o'clock that night under the clock outside Kaufmann's store. James left his car parked nearby and went with Ornato in the latter's car to the Fort Pitt Hotel where they parked. Ornato then excused himself for a few minutes and, as James said, "walked up to a car parked three or four cars ahead and in a matter of three or four minutes, he came back and took me up and introduced me to Mr. Grosso." Ornato then went back to his car and James got into Grosso's car. Grosso with permission of James searched him, presumably for recording devices or weapons. Grosso discussed the numbers racket with James and said he "had" the downtown area, and "a portion of the North Side and some of the uptown business, up on Fifth Avenue and Forbes Street." Grosso

then offered James $200 per month to protect this area, which included the area where the defendant had been twice raided. James agreed, accepted $100 and later, at various times, additional sums totaling $2700 which he said he delivered to his superiors along with police reports.[1] The evidence established that Ornato was operating a lottery; that following his arrest for this violation, he suggested to the arresting officer that there be some "way" to "forget" the case and that they "get together"; that he suggested during the same conversation that James meet Grosso; that Ornato brought about the meeting of James and Grosso in the dark of the night under furtive circumstances; and that as a result of this meeting, payments were made by Grosso to James for protection of the area in which Ornato had been recently twice arrested on lottery charges. These facts taken together were sufficient for the jury to find Ornato guilty.

The appellant contends that we may not consider the evidence which shows that he was involved in an illegal lottery because the jury acquitted him on the indictment charging him with a specific violation of the lottery law.

We recently said, "An acquittal cannot be interpreted as a specific finding in relation to some of the

---

[1] According to the record (pages 57a and 58a of the printed record and page 63 of the original) James testified as follows: "A. On that occasion, Mr. Ornato came to the flower shop in Dormont and he paid me $486, $400 of it was for the protection of the things I have already mentioned." When this is examined in the light of the testimony given by James immediately before it and immediately after it, along with his statement that Ornato made no payments to him (pages 186a and 187a of the record), it is clear that the witness was referring to Grosso and not Ornato, and that either the reporter erroneously reported the name or it was a slip of the tongue by the witness. We have assumed in evaluating the evidence that the witness was referring to Grosso and not Ornato.

evidence. As in other cases of this kind, the court looks upon this acquittal as no more than the jury's assumption of a power which they had no right to exercise, but to which they were disposed through lenity . . . Even though it may have been improperly exercised, the jury had the power to accept the testimony as it applied to one series of offenses and not as to the others." *Commonwealth v. Parrotto*, 189 Pa. Superior Ct. 415, 422, 423, 150 A. 2d 396 (1959). See also *Commonwealth v. Kline*, 107 Pa. Superior Ct. 594, 602, 164 A. 124 (1933). In the *Parrotto* case we also quoted from *Commonwealth v. Franklin*, 172 Pa. Superior Ct. 152, 193, 92 A. 2d 272 (1952) : "To the jury belongs the power to err, not alone in gullibility but also deliberately."

We think there was sufficient evidence from which the jury could properly infer the defendant's guilt.

The appellant contends that the trial judge committed reversible error by denying him the right to show, in order to affect the credibility of Officer James, that he [James] expended sums in excess of all monies he could legally have acquired.

The cross-examination of James was not unduly limited by the trial judge. In addition to lengthy interrogation bearing directly on the issue, the trial judge permitted the defendants to elicit testimony from James in order to affect his credibility that prior to 1945, while a city policeman, he was also a passenger trainman for the Pennsylvania Railroad; that he operated a flower shop; that Ornato and Grosso bought flowers from him and that Grosso's bill was hundreds of dollars a month; that he sometimes carried $100 bills; that while he was receiving money from Grosso he obtained a new Cadillac sedan, a new Plymouth station wagon and a new house; that he did not bring the prosecution against Grosso or Ornato until he was called before an investigating grand jury approximate-

ly eighteen months after Grosso started to pay him for protection; that he had testified in a prior trial that members of his own squad accused him "of practically being a thief"; and that he represented on his application for a position on the police force that he had a college degree when in fact he did not.

When counsel for the defendant attempted to go into greater detail concerning the personal income and expenditures of the witness, the trial judge limited further cross-examination and refused offers of proof on this subject. To have permitted this testimony would have resulted in the trial of a collateral issue that would have completely diverted the jury from the issue being tried. Days could be devoted to interrogation concerning the receipts and expenditures of a witness before it would be possible to determine whether he could account for the source of all the money he spent over a period of years.

Not every suspicious act of a witness is open to examination under the guise of affecting his credibility. In *Elliott v. Boyles*, 31 Pa. 65, 67 (1857) the Supreme Court said concerning the scope of cross-examination: "It would be absolutely intolerable that a man, by being brought into court as a witness, should be bound to submit all the acts of his life to the exposure of malice, under the pretense of testing his credibility."

The credibility of a witness may be attacked by asking him whether he has not been convicted of a particular crime if it be crimen falsi or such as affects his credibility. *Commonwealth v. Payne*, 242 Pa. 394, 401, 89 A. 559 (1913). A witness may not be cross-examined for the purpose of affecting his credibility concerning alleged violations of criminal laws not directly connected with the case on trial and for which he has never been convicted. *Stout v. Rassel*, 2 Yeates 334, 338 (1798); *Weiss v. London Guarantee & Accident Co.*, 285 Pa. 251, 132 A. 120 (1926); *Common-*

*wealth v. Varano,* 258 Pa. 442, 446, 102 A. 131 (1917) ; 2 Henry Pennsylvania Evidence (4th Ed.), §815.

We had occasion to recently rule on this precise question in a case so similar in its facts to the one before us that it governs the motion for a new trial in this case. *Commonwealth v. Caserta,* 177 Pa. Superior Ct. 461, 110 A. 2d 808 (1955). We there said: "Cross-examination has a way of drifting into collateral issues and the proper time to stop it is a matter within the sound discretion of the court. In the absence of an abuse of discretion the trial court will not be reversed. Comm. v. Evancho, 175 Pa. Superior Ct. 225, 103 A. 2d 289 (1954)." (p. 468)

Judgment of sentence affirmed, and it is ordered that appellant appear in the court below at such time as he may be there called, and that he be by that court committed until he has complied with his sentence or any part thereof which had not been performed at the time the order of supersedeas was entered.