## Commonwealth *v.* Bradford, Appellant.

Argued December 12, 1962. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*Bernard L. Segal,* with him *Herman I. Pollock,* of Defender Association of Philadelphia, for appellant.

*Burton Satzberg,* Assistant District Attorney, with him *Arlen Specter,* Assistant District Attorney, *F. Emmett Fitzpatrick, Jr.,* First Assistant District Attorney, and *James C. Crumlish, Jr.,* District Attorney, for Commonwealth, appellee.

OPINION BY WRIGHT, J., March 19, 1963:

On October 20, 1958, the grand jury inquiring in and for the County of Philadelphia, returned two bills of indictment against Joseph Bradford. Bill No. 662 charged assault and battery and aggravated assault and battery. Bill No. 663 charged aggravated robbery as proscribed by Section 705 of The Penal Code, Act of June 24, 1939, P. L. 872, 18 P.S. 4705. The first trial on September 13, 1961, before Judge GRIFFITHS, resulted in a verdict of guilty. Motions for a new trial and in arrest of judgment were overruled and sentence was imposed. However, a new trial was subsequently granted nunc pro tunc. At the second trial on January 24, 1962, before Judge REIMEL, a juror was withdrawn. At the third trial on February 20, 1962, before Judge BLANC, the jury disagreed. At the fourth trial on March 21, 1962, before Judge CHUDOFF, the jury returned a verdict of guilty. Motions for a new trial and in arrest of judgment were overruled, and sentence was imposed on Bill No. 663. This appeal followed.[1]

The record discloses that, at about 10:00 on the morning of January 28, 1958, a masked man carrying a revolver entered the office of the American Loan Company at 747 South Broad Street in the City of Philadelphia. The only person present in the office was the secretary, Mrs. Antoinette Longo. The intruder told Mrs. Longo to follow his instructions or he would kill her. He took $700.00 in cash and checks belonging to the company, and $70.00 from Mrs. Longo's handbag. He then tied Mrs. Longo to a chair, bound her mouth with a scarf, beat her savagely with a blackjack, and warned her against identifying him. Shortly after the man's departure, the janitor appeared and called the police. Mrs. Longo was taken to a hospital

---

[1] Sentence was suspended on Bill No. 662, and no appeal was taken. See *Commonwealth v. Elias*, 394 Pa. 639, 149 A. 2d 53.

where it was found that both sides of her jaw were fractured and she was suffering from severe shock. At approximately 11:15 A.M., Mrs. Longo was questioned by two detectives, at which time she described the intruder as a negro male, 25 years of age, weighing 150 pounds, wearing a gray coat and navy blue trousers. At 7:00 P.M., Mrs. Longo was interviewed by another detective, to whom she repeated her earlier description and added that the intruder was of medium-brown complexion, five feet four inches in height, that his coat was three-quarter length, and that his mask consisted of a dark blue handkerchief. She also stated that he had a squeaky voice. She told the detective not to bother showing her photographs, since she would not be able to recognize the man because of his mask. Some months after the robbery, Mrs. Longo did examine a number of photographs and selected one of Joseph Bradford as the intruder. On October 14, 1958, Mrs. Longo was taken to the Baltimore House of Correction at Jessup, Maryland, to confront the appellant. While waiting in a hallway she heard appellant speak and immediately recognized his voice. When she saw appellant, she stated unequivocally that he was the man. She positively identified appellant at the trial. Appellant testified in his own behalf, denied that he was the intruder, and introduced evidence that he was in Baltimore on the evening of the robbery.

The first and principal contention raised in the extensive brief of counsel for appellant is that the evidence was insufficient to support the verdict. As pointed out by Mr. Justice (now Chief Justice) BELL in *Commonwealth v. Kravitz,* 400 Pa. 198, 161 A. 2d 861: "The test of the sufficiency of the evidence—irrespective of whether it is direct or circumstantial—is whether accepting as true all the evidence upon which, if believed, the jury could properly have based its verdict, it is sufficient in law to prove beyond a

reasonable doubt that the defendant is guilty of the crime charged". See also *Commonwealth v. Ornato,* 191 Pa. Superior Ct. 581, 159 A. 2d 223, affirmed 400 Pa. 626, 163 A. 2d 90. In this connection it should be noted that, while the Commonwealth's case on the issue of identification rested solely on the testimony of Mrs. Longo, a positive unqualified identification by one witness is sufficient for conviction even though other witnesses testify to an alibi: *Commonwealth v. Saunders,* 386 Pa. 149, 125 A. 2d 442; *Commonwealth v. Saldutte,* 136 Pa. Superior Ct. 52, 7 A. 2d 121.

It is argued that Mrs. Longo's opportunity to observe was so poor "as to reduce the alleged identification to the status of a mere opinion". Mrs. Longo testified that the company office was well lighted, that the intruder was in her presence at least twenty minutes, and that he spoke to her several times during that period. We were impressed, as undoubtedly was the jury, with the following testimony in connection with her trip to the Baltimore House of Correction: "Q. When you got there, did you see the defendant immediately? A. Not immediately. The detectives were interviewing him, and I was on the outside, in the corridor. The minute I heard his voice, I knew it was him, because he had squeaky voice at the time. The minute he opened his mouth to talk to the detectives, I said. 'That's him' ". She was then taken into the room with appellant, at which time she recognized him at once. Mrs. Longo's identification of appellant was positive, unqualified and unwavering from that occasion until the time of the instant trial. Where the opportunity for identification is good and the witness remains positive in his identification, testimony as to identity need not be received with caution, but may be accepted as the statement of a fact: *Commonwealth v. Holden,* 390 Pa. 221, 134 A. 2d 868.

It is further argued that Mrs. Longo's testimony as to identification was "inherently unreliable". Counsel point out various alleged inconsistencies in her testimony at the several trials such as the extent to which the handkerchief covered appellant's face, and whether or not he wore a cap. However, Mrs. Longo gave a complete picture of appellant's appearance and movements, describing his voice, eyes, receding forehead, weight, height, posture and gait. Counsel also emphasize Mrs. Longo's earlier statements that she would not be able to identify the intruder. These matters were exclusively for the jury. Cf. *Commonwealth v. Shelbert*, 195 Pa. Superior Ct. 209, 171 A. 2d 574.

It is also argued that the trial judge erred in refusing appellant's first point for charge which was as follows: "Where the opportunity for positive identification is poor, no class of testimony is more uncertain or less to be relied upon than that as to identity". This argument is answered by the case of *Commonwealth v. Kloiber*, 378 Pa. 412, 106 A. 2d 820, affirming 174 Pa. Superior Ct. 483, 101 A. 2d 444. The question of identity was fairly and adequately covered in the charge of the trial judge, who quoted at some length from the *Kloiber* case. Judge CHUDOFF emphasized that testimony as to identity must be received with caution where the witness is not in position to clearly observe or is not positive as to identity, or where his testimony is weakened by failure to identify on one or more prior occasions. In other words, the substance of appellant's first point was fully covered in the charge. Furthermore, the precise language of the point submitted was criticized in the *Kloiber* opinion. A point for charge is properly refused if incorrectly drawn, or if already adequately covered: *Commonwealth v. Chester*, 410 Pa. 45, 188 A. 2d 323.

The second contention advanced on appellant's behalf relates to alleged after-discovered evidence. It is

averred that, subsequent to appellant's conviction, he learned that, on January 28, 1958, a process server went to his home at 1926 Carpenter Street in an attempt to serve a subpoena for appellant's appearance as a witness in another criminal case. It is further averred that the process server noted on the back of this subpoena that appellant's mother stated that her son was out of town, and that a similar notation was made on February 4, 1958, when the process server again attempted to serve the subpoena. Passing the question of the admissibility of this evidence, it is our view that the court below did not abuse its discretion in refusing to grant a new trial on this ground. Cf. *Commonwealth v. Whalen (No. 2)*, 189 Pa. Superior Ct. 359, 150 A. 2d 137. In order to justify the grant of a new trial on the basis of after-discovered evidence, the evidence must have been discovered after the trial and must be such that it could not have been obtained at the trial by reasonable diligence, must not be cumulative or merely impeach credibility, and must be such as would likely compel a different result: *Commonwealth v. Schuck*, 401 Pa. 222, 164 A. 2d 13. Appellant offered no explanation as to why this evidence could not have been discovered with the exercise of diligence during the period of over three years during which this case has been before the courts. Moreover, the evidence would be merely cumulative and corroborative of appellant's alibi, and would be unlikely to effect a change in the result. Cf. *Commonwealth v. Tyson*, 194 Pa. Superior Ct. 593, 168 A. 2d 785.

In conclusion, having carefully reviewed this voluminous original record, we are of the opinion that appellant received a fair trial, that the Commonwealth's evidence was sufficient to support his conviction, and that the court below did not err in refusing to grant a new trial on the basis of after-discovered evidence.

Judgment affirmed.