Commonwealth *v.* Ludlow, Appellant.

Argued September 15, 1965. Before ERVIN, P. J.,
WRIGHT, WATKINS, MONTGOMERY, JACOBS, and HOFF-
MAN, JJ. (FLOOD, J., absent).

*David H. Kubert,* for appellant.

*David Durben,* Assistant District Attorney, with
him *William J. Carlin,* District Attorney, for Com-
monwealth, appellee.

OPINION BY WRIGHT, J., November 10, 1965:

On March 23, 1964, Arlene Barkman, a married
woman, made an information charging William Henry
Ludlow with neglect to support a child born out of
lawful wedlock, as proscribed by Section 732 of The
Penal Code. Act of June 24, 1939, P. L. 872, 18 P.S.
4732. After hearing, the justice of the peace held
Ludlow under bail for court action. On July 6, 1964,
on Ludlow's petition, a blood grouping test was or-
dered, the result of which did not exclude paternity.

Ludlow thereafter entered a plea of not guilty and waived jury trial. The case was heard nonjury by Honorable JOHN P. FULLAM, who made a finding "that the defendant is guilty as charged". Motions for new trial and in arrest of judgment were overruled, sentence was imposed, and this appeal ensued.

In the motion for a new trial, appellant's trial counsel advanced only the stock reasons, namely, that the verdict was contrary to the evidence, the weight of the evidence, and the law. Appellant's present counsel now contends that the Commonwealth was permitted to produce incompetent testimony. Although we perceive no merit in this argument, we will not discuss it since it was not advanced in or passed upon by the court below. Cf. *Commonwealth v. Joyce*, 202 Pa. Superior Ct. 350, 197 A. 2d 226.

The motion in arrest of judgment was based on the contention that the Commonwealth's evidence was insufficient to sustain the verdict "more particularly, but not limited to, the issue of nonaccess". This question is properly before us, and is the sole issue for our determination. The relevant testimony is summarized in the opinion below as follows:

"The child in question was born on October 11, 1962. The testimony indicates that January 10, 1962 was the date of onset of the prosecutrix's last menstrual period before the birth of the child. It therefore appears that the most likely time of conception was late January or early February of 1962.

"The prosecutrix has been married twice, her first marriage terminated in divorce in 1960. On June 17, 1961, the prosecutrix married one Wilson Albert Barkman, and this marriage was not finally terminated until November 4, 1964; an interlocutory decree was entered on October 3 of 1963.

"The prosecutrix was, of course, incompetent to testify as to nonaccess. . . . However, the prosecutrix

was competent to testify as to her association with the defendant. She testified that she first met the defendant in October of 1961 and that 'we were together at least three or four times a week' up until late September of 1963. She testified that they had sexual relations frequently during the entire period. From the fall of 1961 until some time in the spring of 1962, the prosecutrix was employed as a maid. In early January of 1962, the employer's family departed for an European vacation, leaving the prosecutrix alone in their home. She brought her children by her first marriage to the home to live with her during her employer's absence, and during this same period the defendant was with her almost constantly. While he did not actually live with her, he did frequently spend the night with her and was there almost every day.

"When the prosecutrix was forced to give up her employment because of her pregnancy, the defendant maintained an apartment for her and gave her money for her support. The defendant paid the lying-in expenses in connection with the birth of the child (and also in connection with the birth of another child born to the prosecutrix after the institution of the present proceedings), and supported her and the child up until September of 1963.

"The Commonwealth's claim of nonaccess depends principally upon the testimony of the fourteen year old daughter of the prosecutrix by her first marriage. The daughter testified that she and her younger brother accompanied the prosecutrix to California in 1961 and that her mother was married to Mr. Barkman in Long Beach, California in June of that year. She testified that they remained in California for two or three months, at which time her mother and Mr. Barkman separated. The prosecutrix and the two children returned to Pennsylvania in the fall of 1961, and the witness had neither seen nor heard from Mr. Barkman

since then. While the witness did not constantly live with her mother during the period when her mother was employed as a maid, her mother did spend practically all of her days off with the witness and her younger brother. (During the times when the prosecutrix was at work, the two children by the first marriage resided with the prosecutrix's mother.) The witness did live with her mother continuously for the six-week period when the employer referred to above was in Europe;[1] the defendant was with the prosecutrix constantly during that period, but Mr. Barkman was not".

The test of the sufficiency of the evidence is whether, accepting as true all the testimony upon which a verdict could properly have been based, it is sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of the crime charged: *Commonwealth v. Bradford,* 200 Pa. Superior Ct. 216, 188 A. 2d 809. Although nonaccess may not be testified to by either husband or wife, the wife is competent to prove the fact and time of her marriage, her separation from her husband, the date and place of birth of her child, the fact of access by the defendant, her own adultery, and any other independent facts affecting the question of legitimacy, even though some of these facts may result in establishing illegitimacy: *Cairgle v. American Radiator and Standard Sanitary Corp.,* 366 Pa. 249, 77 A. 2d 439.

In *Commonwealth v. Carrasquilla,* 191 Pa. Superior Ct. 14, 155 A. 2d 473, we held that the evidence of the

---

[1] Counsel for appellant asserts that this statement is erroneous. He contends that the testimony of the witness covered a period of three weeks only. This was a matter for the trial judge. In a colloquy after the testimony closed, the trial judge made the following statement: "I will say on the record that, having seen the child and having heard all the evidence that was presented, I don't have any doubt whatever that this defendant is the father of the child".

Commonwealth on the issue of nonaccess was insufficient to overcome the presumption of legitimacy. In *Commonwealth v. DiBonaventure*, 206 Pa. Superior Ct. 340, 213 A. 2d 175, a majority of the court was of a similar opinion. In *Commonwealth v. Fletcher*, 202 Pa. Superior Ct. 65, 195 A. 2d 177, we held that the evidence was sufficient to show beyond a reasonable doubt that the husband did not have access to the wife during the period of conception. It is our view that the instant case is governed by the *Fletcher* case, rather than by the *Carrasquilla* and *DiBonaventure* cases. We agree with the trial judge that the evidence in this record was sufficient to go to the jury, and adopt with approval the following excerpt from his well-considered opinion:

"It thus appears that the competent evidence is ample to establish nonaccess during the most likely period of conception. Admittedly, this direct proof does not cover the entire period during which conception was theoretically possible, but even as to these additional periods, the likelihood of access seems remote. So far as the record discloses, the prosecutrix's husband has never been within 3000 miles of Bucks County. It is clear that he was a resident of California at the time of the marriage and during the brief period the parties co-habited, and we think it a permissible inference that his residence continued in California, in the absence of any evidence to the contrary.

"The prosecutrix's working arrangement, living with the family of her employer, is in itself somewhat inconsistent with the idea of a resumption of the marital relationship with Mr. Barkman. The fact that the prosecutrix spent virtually every day off (usually twice a week) with her children and mother, and that Mr. Barkman was never with her on those occasions, lends further support to the conclusion of nonaccess.

"Admittedly, it is, on the present record, theoretically possible that the husband, without ever getting in touch with his stepchildren or in-laws, journeyed from California to Bucks County, Pennsylvania, and visited the prosecutrix at her place of employment or elsewhere, other than during the latter part of January and first part of February 1962; and that, notwithstanding the medical probabilities, conception occurred prior to January 10, 1962, or after the middle of February 1962. However, the Commonwealth is not bound to exclude utterly any possibility that the husband had access. The existence of remote possibilities is not enough to take the case away from the fact-finder".

Judgment affirmed.