378 A.2d 1245

COMMONWEALTH of Pennsylvania

v.

**William JONES, Appellant.**

Superior Court of Pennsylvania.

Submitted June 28, 1976.

Decided Oct. 6, 1977.

474

John W. Packel, Assistant Public Defender, and Benjamin Lerner, Public Defender, Philadelphia, for appellant.

Steven H. Goldblatt and Deborah E. Glass, Assistant District Attorneys, Philadelphia, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

VAN der VOORT, Judge:

On October 31, 1975 a jury found the defendant William Jones guilty of the charges of Possessing Instruments of Crime, Act of December 6, 1972, P.L. 1482, No. 334, 18 Pa.C.S. § 907, Aggravated Assault, Act of December 6, 1972, P.L. 1482, No. 334, 18 Pa.C.S. § 2702 and Criminal Conspiracy, Act of December 6, 1972, P.L. 1482, No. 334, 18 Pa.C.S. § 903. Post trial motions were filed and denied by the court below. Appellant was subsequently sentenced to serve a term of not less than five years nor more than ten years in

the State Correctional Institution on the charge of aggravated assault. Sentence on possession of instruments of crime and conspiracy were suspended. From that judgment of sentence appellant appealed to this Court.

On March 23, 1975, police officer Robert Stewart, who was off duty at the time in question, was driving his automobile east on Oakdale Street at 25th Street when he looked down Harold Street to see if any traffic was approaching. What Officer Stewart did observe was a fight between two negro males and one white male. The white male, later determined to be the victim, Mr. Edward Jones, was being held between the two assailants, one of which had a hammer in his hand. The officer testified that he jumped out of his car and started to run down the street towards the individuals. As he approached them, he saw one of the assailants hit the victim on the back of the head with the hammer. The officer yelled, although it is not clear what he yelled at that time. One of the two assailants turned around and looked at the officer who was approximately 30 to 40 feet away at this time, and both of them started to run. The police officer testified that he recognized the individual who struck the victim with the hammer when he looked up at the time the officer yelled. The officer further testified that the appellant was not unfamiliar to him because he had worked in that area for six years and had seen appellant before, although he did not know him personally. The only name the officer knew the appellant by was Butch. After yelling at the two, the officer gave chase. The two split up and the individual known to the officer as Butch ran east on Huntingdon Street until he got to the corner where he fell. The officer testified that the appellant again turned around to see how close he was to him which was approximately 15 or 20 feet. At that time the officer got another chance to observe the appellant, who got up and continued to run still carrying the hammer with him. The officer, realizing he would be unable to apprehend the appellant, gave up the chase and returned to the victim, who he observed as having a big gash in the back of his head. By this time other

uniformed police officers had arrived and Officer Stewart informed them of what he had observed and that one of the assailants was known as Butch and he lived in the 2400 Block of Sergeant Street.

The criminal complaint in this case was filed on March 25, 1975, two days after the incident, however, the appellant was not arrested until June 9, 1975. The reason for this delay was that appellant left Philadelphia sometime after the incident and his whereabouts were unknown to the police until May 8, 1975 when they received information that he had gone to Georgia. Appellant was arrested in Valdosta, Georgia on June 7, 1975, waived extradition and was returned to Pennsylvania where he was arrested by the Philadelphia Police on June 9, 1975. His preliminary hearing was on June 16, 1975, at which time he was held for court on the charges of robbery, simple assault, aggravated assault, conspiracy and possession of an instrument of crime and bail was set at $50,000.00. The case was originally scheduled to go to trial on August 25, 1975, but defense counsel requested a continuance for the purpose of conducting a further investigation. The case was then listed for September 25, 1975 at which time defense counsel made a motion to dismiss the charges under Rule 1100 of the Pennsylvania Rules of Criminal Procedure, infra. The motion was argued and denied. Judge Richette ordered that the trial commence prior to December 8, 1975. Appellant's trial started October 29, 1975 and the jury returned the guilty verdict on October 31, 1975.

■ The first argument appellant offers is that the charges should have been dismissed pursuant to Rule 1100. The pertinent parts of that Rule state:

(2) Trial in a court case in which a written complaint is filed against the defendant after June 30, 1974 shall commence no later than one hundred eighty (180) days from the date on which the complaint is filed.

(b) For the purpose of this Rule, trial shall be deemed to commence on the date the trial judge calls the case to trial.

(d) In determining the period for commencement of trial there shall be excluded therefrom such period of delay at any stage of the proceedings as results from:

(1) the unavailability of the defendant or his attorney;

(2) any continuance in excess of thirty (30) days granted at the request of the defendant or his attorney, provided that only the period beyond the thirtieth (30th) day shall be so excluded.

(f) At anytime before trial, the defendant or his attorney may apply to the court for an order dismissing the charges with prejudice on the ground that this Rule has been violated. A copy of such application shall be served upon the attorney for the Commonwealth, who shall also have the right to be heard thereon. Any order granting such application shall dismiss the charges with prejudice and discharge the defendant.

Appellant maintains that the complaint was filed on March 25, 1975 and the trial was originally listed for August 25, 1975. However, on that date, defense counsel requested a continuance for the purpose of conducting a further investigation, which was granted and the trial date was set for September 25, 1975. On September 25, 1975, appellant requested a jury trial and the case was transferred to another courtroom where counsel made a motion to dismiss the charges under Rule 1100(f), supra. The motion was argued and denied with an order directing the trial to commence prior to December 8, 1975. Appellant states that the number of days from March 25, 1975 to September 25, 1975 amounted to 183 days and even with defense counsel's request for a continuation from August 25, 1975 to September 25, 1975, which time comprised 31 days, he was not brought to trial until the 182nd day.

Before we can accept appellant's argument we must first determine whether any other day than the 31st day of the continuance should be excluded from the total number of days. The complaint was filed on March 25, 1975 although the warrant was not secured until March 27, 1975 (M.D.N. T.3). The only explanation provided for the delay of two

days between the signing of the complaint and the securing of the warrant was that the detective was conducting his investigation (M.D.N.T.7). However, the detective testified that once he did obtain the warrant he visited the address of appellant approximately ten times, but found the home vacant. On one occasion, he met the appellant's brother and shortly thereafter discovered that the appellant had gone to Georgia. This was around May 8, 1975. Appellant was not actually arrested in Valdosta, Georgia until June 7, 1975. Although there was no testimony offered as to why it took approximately a month to have appellant arrested in Georgia and transported to Pennsylvania, we do not feel that time is crucial to our resolution of appellant's first contention. The comment to Rule 1100 states:

> For purposes of subparagraph (d)(1), in addition to any other circumstances precluding the availability of the defendant or his attorney, the defendant should be deemed unavailable for any period of time during which he could not be apprehended because his whereabouts were unknown and could not be determined by due diligence;

The record clearly supports the position that the Commonwealth exerted due diligence once the detectives obtained the warrant to apprehend appellant. Repeated visits were made to his only known address and if the detectives had not met appellant's brother, there is little chance they could have discovered his whereabouts. If the time between March 27, 1975, the day the warrant was obtained, and the day the detectives discovered that the appellant was in Georgia, which was May 8, 1975 according to the testimony presented at the hearing on the motion to dismiss and appellant's brief, is excluded from the 182 days under Rule 1100(d)(1), then appellant was brought to trial within the required time. Rule 1100(d) provides for the automatic exclusion of those days defendant is unavailable, therefore the Commonwealth was not obligated to apply to the court for an order extending the time for commencement of trial under Rule 1100(c). See *Commonwealth v. Shelton,* 469 Pa. 8, 364 A.2d 694 (1976); *Commonwealth v. Mayfield,* 469 Pa.

214, 364 A.2d 1345 (1976); *Commonwealth v. Wade*, 240 Pa.Super. 454, 360 A.2d 572 (1976).

Appellant's next contention is that the lower court erred when it failed to quash the indictment charging the defendant with criminal conspiracy to commit robbery and granted the motion of the Commonwealth requesting that the indictment be amended to charge criminal conspiracy to commit aggravated assault. See Act of December 6, 1972, P.L. 1482, No. 334, 18 Pa.C.S. § 2702, and 18 Pa.C.S. § 903. Appellant specifically argues that the action by the lower court violated the Pennsylvania Rules of Criminal Procedure, Rule 220, the Fifth and Fourteenth Amendments of the United States Constitution and Article 1, Section 10 of the Pennsylvania Constitution. Rule 220 states:

> The court may allow an indictment to be amended where there is a defect in form, the description of the offense, the description of any person or any property, or the date charged provided the indictment as amended does not charge an additional or different offense. Upon amendment the court may grant such a postponement of trial or other relief as necessary in the interest of justice. Adopted June 30, 1964, Eff. Jan. 1, 1965.

Appellant maintains that an indictment may be amended only if it does not charge a new offense, and robbery and aggravated assault are two completely separate offenses. He states that the elements of aggravated assault are not the same as those of robbery and therefore an amendment changing the indictment was improperly allowed in his case. However, appellant was initially indicted on the charges of robbery, possessing instruments of crime, simple assault and aggravated assault and criminal conspiracy to commit robbery. The motion to dismiss the charge of robbery was granted by the court at the same time the motion to amend the indictment charging conspiracy to commit robbery to charge criminal conspiracy to commit aggravated assault was granted. Defense counsel took exception to the amendment, however, no motion to continue the case for further preparation due to the amended indictment was made by

counsel, which motion could have been requested under Rule 220, supra. The indictment charging appellant with robbery included three separate counts. The first alleged that the appellant in the course of committing a theft, feloniously did inflict serious bodily injury upon another; the second alleged that in the course of committing a theft, appellant feloniously threatened another with or intentionally put him in fear of immediate serious bodily injury; the third alleged that the appellant in the course of committing a theft, feloniously committed or threatened immediately to commit a felony of the first or second degree. The indictment expressly charged that the felony actually committed or threatened was aggravated assault. The indictment charging the appellant with criminal conspiracy lists the criminal objective of the conspiracy as robbery and the overt act actually committed in furtherance of the conspiracy as aggravated assault. Therefore, the lower court did act within its authority when it allowed the conspiracy to commit robbery indictment to be amended to conspiring to commit aggravated assault. Rule 220 allows an amendment where there is a defect in the description of the offense. The amendment did not charge an additional or different offense. The indictment continued to charge appellant with conspiracy, however, after the amendment, the actual crime committed was aggravated assault, which was also the criminal objective. Of course the purpose of not permitting an amended indictment to charge a new or different crime is to assure that the defendant receives proper notice of the charges filed against him and to allow him time to properly prepare his case. This reasoning necessarily follows from the procedural safeguards contained in the Fifth and Fourteenth Amendments to the United States Constitution as well as the Pennsylvania Constitution. Although Rule 220 specifically provides the court the power to amend an indictment, the court cannot do so arbitrarily or capriciously. Therefore, inquiry must be made into whether or not appellant's rights were violated when the lower court granted the motion to amend the conspiracy indictment. It is well settled that an indictment cannot be amended in a substan-

tial or material way so as to broaden or change the charge or to prejudice an accused by failing to fully apprise him of the charges against him. *Stewart v. United States*, 395 F.2d 485 (8th Cir. 1968), *Stirone v. United States*, 80 S.Ct. 270, 361 U.S. 212, 4 L.Ed.2d 252 (1960), *Russell v. United States*, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962); *Ex parte Bain*, 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1887). Did the indictment, as amended under Rule 220, broaden or change the charges against the appellant thereby preventing him from properly preparing his defense or prejudicing him in some other way?

The two cases heavily relied upon by appellant are *Stirone, supra*, and *Bain, supra*. Both involve factual situations distinguishable from that which is presently before this Court. Appellant in the *Stirone* case was indicted for violating the Hobbs Act by interfering with interstate commerce. He was alleged to have extorted money from an individual engaged in moving sand in interstate commerce for the purposes of making concrete which was to be used in the construction of a steel-processing plant. Although the indictment only addressed the effect of defendant's activity on the interstate commerce of sand, the judge allowed the government to offer evidence on the issue of interference with the interstate movement of the steel which would be produced from the future steel-processing plant. Additionally, the court charged the jury that the defendant could be found guilty on a finding that the sand had moved interstate or that the steel which was to be produced would move in interstate commerce. The United States Supreme Court reversed the conviction noting that evidence and the charge clearly broadened the original indictment and there was no way of knowing whether the grand jury would have included in the indictment the charge of interfering with the interstate commerce of steel. This is unlike the situation before this Court, because the grand jury specifically included aggravated assault as the overt act committed in furtherance of the conspiracy. Therefore the indictment was not broadened and appellant was not prejudiced by the amend-

ment. In the *Bain, supra,* case, the court amended the original indictment by striking certain language which might have made it more difficult for the government to prove its case. The United States Supreme Court held that the relevant and specific allegations stricken necessarily broadened the indictment and amounted to an infringement of the defendant's constitutional rights. In the instant case, the situation is similar to that in *United States v. Noah,* 475 F.2d 688 (9th Cir. 1973). The defendant in that case alleged that his Fifth Amendment rights were violated when the court pursuant to the Federal Rules of Criminal Procedure, Rule 48(a),[1] dismissed five substantive counts from the indictment. The defendant claimed that this action by the lower court changed the original theory of the indictment without it being re-submitted to the grand jury. However, on appeal, the court stated: "We see no merit in Noah's contention. He was in no way prejudiced by the elimination of part of the indictment. An indictment may not be broadened except by grand jury, *Stirone, supra.* Here the indictment was not expanded, but consolidated and some of the charges were eliminated. There is no Fifth Amendment prohibition against this." *United States v. Noah,* 475 F.2d 692 (9th Cir. 1973). As stated previously, the charge of robbery was dismissed and the charge of conspiracy to commit robbery was amended to conspiracy to commit aggravated assault. This action by the lower court neither broadened nor changed the indictment within the contemplation of *Stirone, supra,* or *Bain, supra.* This was a procedure permitted by Rule 220 and did not result in any prejudice to the appellant.

▆▆▆ Appellant also contends that the jury's verdict of guilty on the charge of aggravated assault was based solely on the amended indictment. Specifically, and to quote from his brief, appellant reasons, "the jury was given the stan-

---

1. F.R.Crim.P., Rule 48(a) states:
   (a) By Attorney for Government. The Attorney General or the United States attorney may by leave of court file a dismissal of an indictment, information or complaint and the prosecution shall thereupon terminate. Such a dismissal may not be filed during the trial without the consent of the defendant.

dard charge relating to a conspiracy, i. e. a co-conspirator is equally culpable for substantive offenses occurring as a result of conspiracy as for (sic) the conspiracy itself (N.T. 174, 175). As such, it is a fair assumption that the jury returned its verdict of guilty as to the substantive offense of aggravated assault on the basis of finding that a conspiracy did exist". Appellant seems to forget that an indictment was returned against him charging that he actually committed an aggravated assault on the victim. Also the testimony presented during the trial clearly supported the jury's verdict that appellant had committed an aggravated assault. On direct examination the officer who recognized the appellant on the day of the incident testified as follows:

Q. And what did you do, sir, after making this observation?

A. I jumped out of my car and ran down the street and as I got near them I yelled. I saw one male hit the white male on the head with the hammer. I yelled after he hit him and the negro male, that is, one negro male looked around and saw me. I noticed his face. He turned and ran, both of them then turned and ran.

Q. Now, do you see that person that struck the white male in court today?

A. Yes, I do.

Q. Is he present in court?

A. Yes.

Q. Where is he sitting?

A. He is sitting over there.

Q. What is he wearing, sir?

A. He is a (sic) wearing a flowered shirt.

MR. KING: Let the record indicate that Officer Stewart has pointed to the defendant in this case, William L. Jones.

The above testimony describes what occurred that resulted in the charge of aggravated assault and it identifies the assailant who hit the victim with the hammer as the appellant. On the basis of the testimony quoted above, it is

difficult to afford appellant's argument any real merit. It is a well settled rule that the jury is the trier of fact and it may judge the credibility of a witness and decide how much weight is to be afforded the testimony. In the case *Hunter Will*, 416 Pa. 127, 205 A.2d 97 (1964), the court stated, 416 Pa. at 136, 205 A.2d at 102: that "[i]t is axiomatic that the credibility of witnesses, professional or lay, and the weight to be given their testimony is strictly within the proper province of the trier of fact." Therefore, it would be improper for a trial judge or an appellate court to try to analyze the thinking process of a jury and make an assumption on what it based its verdict on. In this case it was clearly within the jury's province to believe the officer's testimony and base its verdict on what he stated. We cannot as readily assume that the jury found the appellant guilty of aggravated assault on the basis of the conspiracy indictment as his counsel urges us to do.

Appellant's next argument is predicated on the charge of the trial judge to the jury. He attacks the charge for what was not included and for what was included. Initially, he claims that the trial judge failed to charge the jury on the effect of and consideration to be afforded inconsistent statements by a witness when such inconsistencies were apparent on the record. During his cross-examination of the officer who witnessed the assault, defense counsel attempted to show inconsistencies between the officer's testimony at the preliminary hearing and what he testified to on direct examination during the trial. One area of discrepancy included the time the officer took between first viewing the assault and getting out of his car. At the preliminary hearing he testified that it was approximately a minute before he left his car and during the trial he stated once he observed the assault he immediately jumped out of his car and approached the group of men. A second point of inconsistency occurred when the officer testified at the preliminary hearing that when he yelled after observing the appellant strike the victim with the hammer, both assailants turned around and looked at him, however, defense counsel noted that during the trial the officer testified that only the

appellant looked up. Thirdly, defense counsel attempted to establish that an inconsistency occurred when the officer testified at the preliminary hearing that he was about fifteen feet away when he first observed appellant's face, however, during the trial he testified the distance was between thirty and forty feet. A final point of inconsistency brought out by counsel occurred when the officer stated that the assailants were standing on either side of the victim, but the victim testified they were standing behind him, and that was the reason he was unable to identify either one. Defense counsel attacked the officer's credibility when he was cross-examining him during the trial. At that time, the trial judge interrupted the proceeding and addressed the jury on the law of inconsistent statements. He gave a correct and complete charge on when inconsistent statements can be considered by a jury and the effect of them on the witness' credibility. At the conclusion of his remarks, defense counsel proceeded to cross-examine the officer and did not request of the judge that he make any additional charges. The timing and content of the instructions could not have been more advantageous to appellant. The law on credibility and inconsistent statements was fresh in the jury's memory at the very moment counsel was attacking the police officer's testimony. However, this was not the only time that the jury received instruction on credibility. At the conclusion of the trial, the judge charged the jury on credibility and specifically how it related to the issue of identification which the judge stressed as being very crucial. This Court would find it difficult to rule that the lower court's refusal to include two additional charges on the issues of inconsistent statements and credibility was reversible error. The officer never waivered from his position that he positively identified the appellant. Even accepting discrepancies in his statements concerning the time and distance of his observation, there was still no question in his mind about who one of the assailants was. In *Commonwealth v. Bradford*, 200 Pa.Super. 216, 188 A.2d 809 (1963), the court was also confronted with the issue of proper identification. There the court stated, 200 Pa.Super. on

page 221, 188 A.2d on page 812: "[a] point for charge is properly refused if incorrectly drawn, or if already adequately covered". Also see *Commonwealth v. Chester*, 410 Pa. 45, 188 A.2d 323 (1963). Appellant in the case *Commonwealth v. Butler*, 405 Pa. 36, 173 A.2d 468 (1961) alleged that the trial judge erred in refusing to charge in the specific manner requested by defense counsel. The court stated, 405 Pa. on page 52, 173 A.2d on page 476:

> The trial court is not required to give a number of different instructions upon the same subject, and it is not error to refuse to give a requested instruction, although it states a correct principle of law applicable to the case, if it has been covered properly and sufficiently by other instructions already given: *Commonwealth v. Thomas*, 357 Pa. 68, 53 A.2d 112 (1947); *Commonwealth v. Smith*, 374 Pa. 220, 97 A.2d 25 (1953); *Commonwealth v. Zietz*, 364 Pa. 294, 72 A.2d 282 (1950).

The trial court in the instant case stated that he was of the opinion that his charges on credibility were quite adequate and it was unnecessary to include the additional requests of defense counsel. We hold that the trial court acted properly when it denied counsel's requests.

The appellant also argues that it was error for the trial court to charge the jury on flight. The court stated in its charge that flight alone is not sufficient to warrant a finding of guilt. Additionally, the court stated there was no evidence that the defendant knew he was wanted unless the jury found that he was the individual that the officer identified on the date of the incident. Therefore, the members of the jury were aware that if they had reasonable doubts about whether the officer had time to identify the appellant then they should not consider the issue of flight. The case law on the issue of flight is very clear and it requires the defendant have knowledge that he is wanted in connection with the crime committed. "When a person commits a crime, knows that he is wanted therefor, and flees or conceals himself, such conduct is evidence of consciousness of guilt, and may form the basis in connection with other proof from which other guilt may be inferred: *Common-*

*wealth v. Boschino,* 176 Pa. 103, 34 A. 964 (1896); *Commonwealth v. Fasci,* 287 Pa. 1, 134 A. 465 (1926); *Commonwealth v. Del Giorno,* 303 Pa. 509, 154 A. 786 (1931); *Commonwealth v. Homeyer,* 373 Pa. 150, 94 A.2d 743 (1953)". *Commonwealth v. Coyle,* 415 Pa. 379, 393, 203 A.2d 782, 789 (1964). As recently as 1974, the Pennsylvania Supreme Court held that it is not necessary for the Commonwealth to prove that the accused who has fled had actual knowledge that the police knew of his crime. The court stated in *Commonwealth v. Jones,* 457 Pa. 563 at 576, 319 A.2d 142 at 150 (1974): "[i]t is sufficient under this doctrine that the circumstances justify an inference that the accused actions were motivated as a result of his belief that the officers were aware of his wrongdoing and were seeking him for that purpose". Also see *Commonwealth v. Osborne,* 433 Pa. 297, 249 A.2d 330 (1969). The question presently before us is whether the jury could have been justified in inferring that appellant fled because he saw an officer, who knew appellant by sight due to his six years experience working that area. It is reasonable to infer that the appellant knew that the officer recognized him and therefore fled the area to avoid being apprehended for the crime. These inferences were possible and the charge to the jury on the element of flight was correct.

Affirmed.