## Commonwealth v. Orzel

*Jeffrey Williams,* assistant district attorney, for the Commonwealth.

*Nathan Criste,* for defendant.

GARB, *P.J.,* September 13, 1984—This matter comes before the court on defendant's post-trial motions for a new trial and/or arrest of judgment after conviction by a jury on the charges of solicitation to commit simple assault and solicitation to obstruct the administration of law.

The facts of the case are as follows: On December 9, 1982, defendant, Eugene Orzel, approached Sam Grillo at Grillo's place of employment. In the course of conversation, defendant asked Grillo to "do a job for him". Nothing further was said on the subject until December 21, 1982, when defendant called Grillo and sought to hire Grillo to beat up an individual with whom defendant was having a problem. Grillo went to the Quakertown Police Station and reported these incidents. Upon direction of an investigating officer he called Eugene Orzel from the station on December 23, 1982. During that telephone conversation, Grillo learned that defendant Orzel wanted to hire him to hurt Steven Duna, or more specifically, defendant wanted Duna's "legs broken."

Grillo arranged to meet defendant at his place of business. Grillo wore a body recorder authorized by the district attorney and supplied by the police, which recorded a conversation between defendant and Grillo in defendant's vehicle. The tape, which was admitted into evidence during the Commonwealth's case-in-chief, was the key evidence in the case. The tape established that defendant agreed to pay Grillo ($250) to beat up Steven Duna. The mo-

tive for this request was a civil law suit previously filed by Duna against defendant. Defendant was subsequently convicted, after a jury trial, of solicitation to commit simple assault and solicitation to obstruct the administration of law.

I. At pre-trial argument held on June 20, 1983, defendant argued that the Wiretapping and Electronic Surveillance Control Act, 18 Pa.C.S. §§5701-5726, Section 5704, requires that the facts be transmitted to the district attorney in sufficient detail to permit him to determine if probable cause exists for the issuance of a consensual wiretap and that the memorandum prepared by Detective Petko was not sworn to under oath; further, that it did not on its face state probable cause to believe that criminal activity was afoot or that a surveillance of Orzel would lead to the discovery of criminal acts. The trial court found defendant's argument without merit and found that the memorandum did, on its face, set forth sufficient allegations and a reasonable basis for the use of the surveillance.

Defendant now argues that the procedure authorizing police officers or their agents to record private conversations without a warrant diminishes fundamental principles of privacy embodied in the Pennsylvania Constitution.

The Wiretapping Act, in general, makes criminal the willful interception of any wire or oral communications. Id. §5703(1). Section 5704 of the act enumerates certain activities which it holds not to be unlawful. Specifically, Section 5704(2)(ii) states that it shall not be unlawful for "[a]ny investigative or law enforcement officer or any person acting at the direction or request of an investigative or law enforcement officer to intercept a wire or oral communication involving suspected criminal activities

where: . . . (ii) one of the parties to the communication has given prior consent to such interception."

Defendant's constitutional claim is that, notwithstanding the act, there cannot be a wire interception as used in this case, without a judicial order based on probable cause. Defendant argues that the standard provided in the act[1] authorizes "gross violations of privacy by subjecting our citizenry, by making the Commonwealth an uninvited and unseen listener to whatever private conversations they care to monitor if they are suspicious of the party involved."

The right upon which defendant relies is recognized in both the Fourth Amendment to the Federal Constitution and Article 1, §8 of the Pennsylvania Constitution, which states:

"The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant."

The constitutional prohibition against unreasonable searches and seizures extends beyond the home to protect the individual against unwarranted government intrusions into any area where the individual may harbor a reasonable expectation of privacy. Katz, v. United States, 389 U.S. 347, 88 S. Ct. 507, 19 L. Ed.2d 576 (1967). However, the Fourth Amendment does not protect a party to a conversa-

---

1. The standard of Section 5704(2) requires: (1) suspected criminal activity, and (2) an investigative or law enforcement person who is a party to the communication or one of the parties to the communication who has given prior consent to such interception.

tion who reposes a trust or confidence in an undisclosed government agent or informant. Hoffa v. United States, 385 U.S. 293, 87 S. Ct. 408, 17 L. Ed. 2d 374 (1966). "The risk of being overheard by an eavesdropper or betrayed by an informer or deceived as to the identity of one with whom one deals is probably inherent in the conditions of human society. It is the kind of risk we necessarily assume whenever we speak." Hoffa, supra, at pp. 382-83. For the undisclosed agent to simultaneously record the conversation with an electronic recording device on his person is no violation of the Fourth Amendment nor is it unconstitutional to transmit the conversation to a remote place where it is overheard and recorded. See Greenspun v. Schlindwein, 574 F. Supp. 1038 (E.D. Pa. 1983). Furthermore, where one party to the conversation consents to the electronic monitoring, the conversation is admissible. See U.S. v. Mitlo, 714 F.2d 294 (3rd Circuit Ct. of Appeals, 1983) U.S. cert. den'd. 104 S. Ct. 550 and cases cited therein.

Reposing a trust or confidence in Grillo, an undisclosed informant raised no legitimate Fourth Amendment expectation of privacy right. Recording the conversation between defendant and Grillo, with the consent of Grillo, was not a Fourth Amendment violation. Without a Fourth Amendment right, there is no need for a warrant based on probable cause.

We disagree with defendant's argument that the pre-Katz decisions are no longer valid because in Katz a different situation from the previous cases applied. In On Lee v. United States, 343 U.S. 747, 72 S. Ct. 967, 96 L. Ed. 1270 (1952); Lopez v. United States, 373 U.S. 427, 83 S. Ct. 1381, 10 L. Ed. 2d 462 (1963); Lewis v. United States, 385 U.S. 206, 17 L. Ed. 2d 312, 87 S. Ct. 424 (1966) and Hoffa,

supra, defendants knowingly made incriminating statements to agents who either transmitted them (On Lee), recorded them (Lopez), or later repeated them (Lewis and Hoffa). In Katz, the government recorded defendant's telephone conversations without his knowledge or consent nor the knowledge or consent of the other parties to the conversation. The Katz court held the government's conduct violated the privacy upon which Katz justifiably relied while using the telephone booth and thus constituted a Fourth Amendment search and seizure. In this case, one party consented to the interception, the unconsenting party had a misplaced trust in the consenting party and there was no expectation of privacy.

Defendant then argues that even though Federal Courts may hold that consensual wiretapping is permissible, the State Court, applying the Pennsylvania Constitution, should impose standards on searches and seizures higher than those required by the Federal Constitution. It cannot be doubted that Pennsylvania has the constitutional power to guard individual rights, including the right to be free from unreasonable searches and seizures, more zealously than the federal government does under the United States Constitution. Commonwealth v. Beauford, et al., No. 3351 Philadelphia, 1981, Pa. Super. Ct., April 13, 1984; United States v. Geller, 560 F. Supp. 1309 (1983). Two Pennsylvania cases[2] where the court afforded greater protection against government surveillance and intrusion are Commonwealth v. Beauford, supra; Commonwealth v.

---

2. Defendant cites cases from other states where greater protection was granted under constitution of those states. This court need not recognize those cases but even in recognizing them finds them limited on their facts.

DeJohn, 486 Pa. 32, 403 A.2d 1283, cert. den'd. 444 U.S. 1032 (1979).[3] We find these cases inapposite to the case before us.

The Wiretapping Act, §5704(5) and case law permit law enforcement officers to use a pen register without a judicial order founded on probable cause, based on the reasoning that because a telephone caller voluntarily conveyed this information to the telephone company, there was no legitimate expectation of privacy and, therefore, no restriction on third-party access to the information. In Commonwealth v. Beauford, supra, a recent Superior Court case, the court afforded special protection to the privacy interest inherent in a telephone call and held that an individual's expectation of privacy in the telephone numbers he calls is reasonable and legitimate and, therefore, pen registers are constitutionally protected against government surveillance and intrusion without probable cause.

The Bank Secrecy Act, 12 U.S.C. §1829b(a)(1) and interpretive cases permit bank records, voluntarily conveyed to the bank and exposed to their employees in the ordinary course of business, to be used in criminal, tax and regulatory investigations. In Commonwealth v. DeJohn, supra, at p. 1290, the Supreme Court stated that "to permit a police officer access to these records merely upon his request, without any judicial control as to relevancy or other traditional requirements of legal process, and to allow the evidence to be used in any subsequent criminal prosecutions against a defendant, opens the door to a vast and unlimited range of very real

---

3. There are other Pennsylvania cases where the state granted greater protection under its constitution than that afforded by the Federal Constitution. The ones cited are most closely analogous and pertinent to the case at bar.

abuses of police power." The court held that under Article 1, §8 of the Pennsylvania Constitution, bank customers have a legitimate expectation of privacy in records pertaining to their affairs kept at the bank.

In both cases, there is involved certain noncriminal information voluntarily conveyed to the telephone companies and to banks in the normal course of business, which was then sought by third parties for criminal investigatory purposes, said purposes unrelated to providing telephone and banking services. Our courts have never granted a defendant greater protection under the state constitution for interception of a wire or oral communication involving suspected criminal activities where one of the parties to the conversation has given prior consent to exactly that interception. A person's misplaced belief that someone in whom he voluntarily confides incriminating evidence will not subsequently reveal it does not suggest that the other person will not subsequently reveal it. We can find no legitimate expectation of privacy in this situation, and no violation of the federal and state constitutions. The act is more than sufficient in the standards as stated.

II. Defendant's second contention is two-fold. Defendant argues that the law of consensual interceptions is fundamentally flawed in that it fails to appreciate that both parties to a conversation have a constitutional right to privacy, i.e., that both parties are protected by the Fourth Amendment to the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution. Defendant contends that because one of the participants to the conversation agrees to or participates in the electronic surveillance does not take the issue outside the Fourth Amendment and the consensual wire-

taps are subject to the search warrant requirements. We disagree.

The warrant requirement is a procedure which guarantees a measure of privacy and personal security to citizens. Our laws must insure that the ordinary, law-abiding citizen may continue to engage in private discourse, free to speak with the uninhibited spontaneity that is characteristic of our society. Prior review by a neutral and detached magistrate is the time-tested means of effectuating the Fourth Amendment rights. Forsyth v. Kleindienst, 551 F. Supp. 1247 (1982).

The test as to whether the constitution and the statutory laws which put in force the prohibitions have been violated is whether a person whose conversation was recorded had a reasonable expectation of privacy at the time of the recording. A consensual interception of conversation without the use of a warrant and by the use of the intercepted communication against the non-consenting party, has been found not to be in violation of the Fourth Amendment. See Commonwealth v. Donnelly, 233 Pa. Super. 396, 336 A.2d 632, cert. den'd. 424 U.S. 974 (1975). In Lopez v. United States, supra, the United States Supreme Court held that the admission of transcriptions of conversations, which had been electronically seized without a warrant, were constitutionally admissible to corroborate the direct testimony of the informer, who had been a party to the conversation and who had consented to the interception. Whatever the contours of any constitutional right of privacy may be, there is no constitutionally protected expectation that the party to whom a communication is made will not repeat that communication or will not consent to its being re-

corded and disclosed. United States v. Cianfrani, 573 F.2d 835 (C.A. Pa. 1978). The Fourth Amendment does not protect a wrongdoer's misplaced belief that a person in whom he voluntarily confides his wrongdoing will not reveal it. See Commonwealth v. Brown, 437 Pa. 1, 261 A.2d 879 (1970).

In this case, Grillo, a party to defendant's conversation, gave up his expectation of privacy by consenting to the conversation being recorded. Defendant, the non-consenting party, does not have a justifiable expectation of privacy. A misplaced belief by defendant that Grillo would not reveal his confidence is not protected by the Fourth Amendment. Since the Fourth Amendment is not implicated, the warrant requirement is not triggered.

Defendant then argues that there is an unconstitutional delegation of judicial authority in the statute in its allowing the district attorney, upon mere suspicion, to authorize the consensual electronic surveillance.

Generally, under the Pennsylvania Wiretapping Act it is impermissible for police officers to conduct an electronic surveillance, wiretap, or record a conversation of private persons without an order to do so issued from an independent magistrate. The act provides a specific method by which designated law enforcement officials apply for an order from a Superior Court Judge authorizing wire interception (see 18 Pa. C.S. §5708), which order is available only when investigating certain crimes (see 18 Pa. C.S. §5708). The requirements of a judicial order based on probable cause has no impact upon the recording or interception of conversations where the recording official is a party to the discussion or where one party to the conversation consents to

such interception. Compare 18 Pa. C.S. §5704 with 18 Pa. C.S. §§5708-12.

Defendant in the case at bar has no justifiable expectation of privacy and, therefore, no interest legitimately protected by the Fourth Amendment. Consensual interceptions in cases such as this are not searches under the Fourth Amendment; do not require probable cause and are not subject to the Fourth Amendment scrutiny to which nonconsensual intercepts are subject. Since no Fourth Amendment rights are implicated, the authority in a consensual search is never given to a Superior Court Judge. Therefore, there is no improper delegation of judicial authority conferred on the district attorney.

III. Defendant's third allegation of error faults the amendment of three counts of the information. Defendant moved to quash the information for the district attorney's lack of compliance with Pa.R.Crim.P. 229 or requested the case to be continued so defendant could be arraigned and pre-trial motions could be filed.

Defendant was arrested on December 30, 1982, and charged with criminal attempt and criminal solicitation to commit aggravated assault, simple assault and obstruction with the administration of law. At the preliminary hearing on February 1, 1983, the criminal attempt charges were dismissed but the criminal solicitation charges were bound over for trial. The district attorney's office filed an information on March 22, 1983, but erred in its preparation, charging defendant with the dismissed attempt counts. Defendant waived arraignment on March 22, 1983, and trial was set on June 20, 1983. On June 13, 1983, the district attorney's office filed

an amended information charging the previously bound solicitation counts.[4]

According to Pa.R.Crim.P. 229, a court has discretion to allow amendment of the information where there is a defect in the form or description of the offense, provided the information does not charge an additional or different offense. Pa.R.Crim.P. 229; Commonwealth v. King, 287 Pa. Super. 105, 429 A.2d 1121 (1981). The purpose of the rule is to assure that defendant has been fully apprised of the charges against him, to avoid prejudice arising from the last minute addition of alleged criminal acts of which defendant is uninformed and to allow defendant to prepare an adequate defense for trial. Commonwealth v. Lawton, 272 Pa. Super. 40, 414 A.2d 658 (1979); Commonwealth v. Jones, 250 Pa. Super. 471, 378 A.2d 1245 (1977). In effecting this purpose, the courts of this Commonwealth employ the test of whether the crimes specified in the original information involve the same basic elements and evolved out of the same factual situation as the crimes specified in the amended information. Commonwealth v. Stanley, 265 Pa. Super. 194, 401 A.2d 1166 aff'd. 498 Pa. 326 (1979). If, however, the amended provision alleges a different set of events or if the elements or defenses to the amended crime are materially different from the elements or defenses to the crime originally charged, such that defendant would be prejudiced by the change, then the amendment is not permitted. Stanley, supra.

---

4. We do not condone the Commonwealth's filing of an amended information absent a motion to the court but we see no prejudice to defendant. We would have permitted the amendment based on our substantive disposition of this case.

In the case at bar, the crimes specified in the amended information evolved out of the same factual situation as the crimes specified in the original information. Also, those facts are the bases for a charge of solicitation, i.e., a third person, Sam Grillo, was requested by defendant to engage in specific conduct which would constitute a crime or attempt to commit such crime. Solicitation and attempt are both inchoate crimes and both have as a defense renunciation of criminal intent. Defendant testified at trial that he called Sam Grillo in late December of 1982 and told Grillo that there was someone who had aggravated him for the last couple of years and maybe Grillo could beat him up, "or do a job" for defendant. Defendant further testified that he met with Grillo on or about December 28, 1982 and retained Grillo to beat up Steve Duna who had sued defendant. Defendant's defense was that defendant did not intend Sam Grillo to actually assault the victim.

Under this set of circumstances, amendment of the information was not error. The elements and defenses of solicitation are not materially different from the elements and defenses of attempt. Also, defendant's defense to the charges was not affected by permitting the amendment. Moreover, this court finds no prejudice whatsoever to defendant by the change. Defendant and counsel knew at the time of arrest that both attempt and solicitation were charged. Defendant and counsel knew at the time of the preliminary hearing on February 1, 1983 that defendant was being bound over for court on the solicitation charges. Defendant was alerted of the solicitation charges against him, was not prejudicated nor surprised by the correction and had ample opportunity to prepare for an adequate defense for trial on those charges.

In similar cases, the court has held that a showing of prejudice was not established and that the amendment was properly permitted, even where a different offense was charged. See Commonwealth v. Womack, 307 Pa. Super. 396, 453 A.2d 642 (1982); Commonwealth v. Wilson, 296 Pa. Super. 264, 442 A.2d 760 modified 498 Pa. 529, 447 A.2d 1381 (1982); Commonwealth v. Stanley, supra; Commonwealth v. Lawton, supra.

Since this court finds no prejudice, the denial of the request for a continuance for an arraignment and for filing pre-trial motions was proper. One purpose of an arraignment is to give defendant notice of the charges against him. Commonwealth v. Andrews, 285 Pa. Super. 100, 426 A.2d 1160 (1981). As defendant had notice of the charges, no arraignment was deemed necessary. Also, the filing of pre-trial motions was denied as defendant had the opportunity to file all motions after the first information and discovery after the second information would be identical. Finally, for the reasons previously discussed, defendant had no need for a continuance to review the new information and prepare for trial.

IV. Defendant was charged with criminal solicitation to commit simple assault, criminal solicitation to commit aggravated assault and criminal solicitation to obstruct administration of law. The crime at issue is the third of these and is stated in the information as follows:

(3) Criminal Solicitation

(Defendant) . . . did, with the intent of promoting or facilitating its commission, encourage or command or request one Samuel Grillo, to engage in specific conduct, to wit, plan with one Samuel Grillo the assault of one Steven Duna in retaliation as well as interference or obstacle in a civil proceeding filed

against the above actor, which would establish Eugene Orzel's complicity in its commission or attempted complicity.

The court, in its charge to the jury, instructed on the general crime of solicitation, the crime of aggravated assault, the crime of simple assault and the crime of obstructing administration of law or other governmental function.

The crime of obstructing administration of law was charged as follows:

"(t)he offense of obstructing administration of law or other governmental function would, first, occur when a person intentionally obstructed, impaired or perverted the administration of a governmental function, and here that governmental function would be the appropriate carrying out of a civil lawsuit; and that such obstruction would be done either by force, by violence, physical interference or obstacle or some other unlawful act."

The suggestion, the allegation here would be that the manner of obstructing that lawsuit would be by getting a third person through threats or violence to encourage the party to that lawsuit to withdraw the lawsuit, which he had the right to win it or lose it, but presumably that third person would have the right to continue to carry it out to its ultimate end.

The court further charged that to find defendant guilty of soliciting that crime, the jury must prove beyond a reasonable doubt that defendant encouraged or requested Mr. Grillo to engage in specific conduct with the intent of promoting or facilitating the commission of the crime of obstructing or interfering with a governmental function and that the conduct encouraged would constitute the crime of obstructing administration of law.

Defendant contends that the trial court erred by instructing the jury on the elements of criminal solicitation to obstruct the administration of law by charging on the general language of the statute and not the specific language of the information filed by the Commonwealth. Defendant argues that the court charged as part of the offense that threats or violence to withdraw the lawsuit constitutes a commission of the crime although there is nothing in the information which charges defendant with threatening or of requesting that Duna withdraw the lawsuit. Defendant further argues that the information as drafted defined the assault as the specific act.

Defendant was arrested and charged, inter alia, of solicitation to interfere with the administration of law, said charge being held for court. The information set forth this crime with sufficient particularity. At trial, Sam Grillo testified that defendant wanted Steve Duna's legs broken because Duna had a lawsuit against defendant and defendant thought Duna was lying to him about the accident. Dolores Conti of the prothonotary's office substantiated the fact that there was a lawsuit filed by Steven Duna against defendant's business and that the suit was pending at the time of the crimes. Finally, defendant himself testified that he retained Grillo to beat up a person who had sued him.

Defendant contends that his defense, i.e., that he did not intend for Grillo to actually assault Steve Duna but only to scare him, if believed, would be a defense to the specific assault crime charged. We agree with defendant's contention but dismiss its merit as the jury also found defendant guilty of solicitation to commit simple assault, which assumes that the jury found that defendant intended to cause bodily injury to another.

All evidence leads to the conclusion that defendant was apprised of the charge he had to meet. See Commonwealth v. Lambert, 226 Pa. Super. 41, 313 A.2d 300 (1973). The judge read to the jury from the standard jury instructions and those instructions clarified the charges brought against defendant so as to allow the jury to understand the charges and in turn to apply the law to the facts of the instant case. Defendant was not misled by the information nor prejudiced by the court's charge to the jury.

V. Defendant lastly contends that the recordation requirements of the Pennsylvania Wiretapping and Electronic Surveillance Control Act were not met in this case.

Notwithstanding the more informal procedure for consensual interceptions, the law requires ". . . such interception shall be subject to the recording and record-keeping requirements of Section 5714(a) (relating to recording of intercepted communications) and that the Attorney General, deputy attorney general, district attorney or assistant district attorney authorizing the interception shall be the custodian of recorded evidence obtained therefrom."

Section 5714(a) addresses recording and monitoring of intercepted communications and states:

Any wire or oral communication intercepted in accordance with this chapter shall, if practicable, be recorded by tape or other comparable method. The recording shall be done in such a way as will protect it from editing or other alteration. Whenever an interception is being monitored, the monitor shall be an investigative or law enforcement officer certified under Section 5724 (relating to training), and

where practicable, keep a signed, written record which shall include the following:

(1) The date and hour of surveillance.

(2) The time and duration of each intercepted communication.

(3) The participant, if known, in each intercepted conversation.

(4) A summary of the content of each intercepted communication.

At the pre-trial hearing, there was evidence that Detective Wagner met with District Attorney Kane the day after the interception and reviewed the tape, and facts and circumstances. Detective Wagner testified that his recollection was that he had done a memorandum that same day. However, further evidence showed that when Detective Petko picked up a copy of the tape on the morning of trial, no report was in the file. Detective Wagner testified that he then, on the day of trial, prepared a memorandum of interception. This memorandum of interception (Commonwealth Exhibit CS-6) contained a statement of the date, time, place, means of interception and parties involved in the interception. A summary of the intercepted communication was attached in transcript form. The transcript itself was in the file and had been prepared some time previous to trial.

Defendant argues that the report was not prepared in compliance with the record-keeping requirements of the statute and, therefore, the evidence should have been suppressed. Defendant further argues that the requirements are mandatory and that the inclusion of the language in the act itself indicates a legislative intent that such a record be kept. We disagree.

There is no case law interpreting Section 5714 of the Wiretapping Act. The intent of Section 5714

seems to be to insure accuracy and to safeguard the constitutional protection against invasion of privacy. Section 5714 states that whenever an interception is being monitored, the monitor shall be a certified investigative or law enforcement officer, and where practicable, keep a signed, written record.

The court is satisfied that such accuracy had been insured. Officer Thomas Petko, in his memorandum requesting authorization to intercept, included the proposed date, time, place and means of interception and parties involved. After the interception, the initials of Detective John A. Wagner, Jr. and the date of the interception were placed on the tape itself and a verbatim transcript of the tape was prepared. There was also an introduction to the conversation placed on the tape. The district attorney kept the tape in a safe from the day after the interception until the court hearing.

Section 5714 does not require strict observance. Lack of a record of the time, duration of interception, and participants involved has no effect on the case. All of the evidence at the pre-trial hearing was uncontroverted as to the date, time, place, means of interception and participants involved. No such report was practicable[5] or necessary. In this case, the documents that had been prepared and the exact transcript that had been submitted clearly meet the record-keeping requirements of Section 5714.

Based on the foregoing, we enter the following

## ORDER

And now, this September 13, 1984, defendant's motion for a new trial and/or arrest of judgment is denied.

---

5. Practicable is defined as feasible, capable of being used.

The above opinion was authored by the Hon. Leonard B. Sokolove, but before it was ready for signature, Judge Sokolove became ill. The order is signed by the Hon. Isaac S. Garb, P.J. in his stead so that the matter not be delayed.